FILED
2022 Mar-24  AM 10:59
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

JOHN MCCARLEY,         )
      Plaintiff,         )
                     )
v.                   )               4:21-cv-00570-LSC
                     )
JEFFERSON DUNN, *et al.*,   )
      Defendants.      )

## MEMORANDUM OF OPINION

Plaintiff John McCarley brings this action against ten current and former Alabama Department of Correction employees, alleging Constitutional violations under 42 U.S.C. § 1983 and a claim of negligence under Alabama law. Before this Court are Defendants Karla Jones, Errol Pickens, Nekitris Estelle, Gary Malone, Kevin White, Carla Graham (collectively, "Facility Supervisors"), Larry Baker, Antoine Price, and Derreck Dent's (collectively, "Correctional Officers") Motion to Dismiss or, in the Alternative, to Strike Plaintiff's Complaint (Doc. 45) and Defendants Jefferson Dunn, Steve Watson, Jennifer Abbott, Arnaldo Mercado, Edward Ellington, and Matthew Brand (collectively "ADOC Officials"[1]) Motion to

---

[1] Plaintiff asserts various claims against the defendants collectively. He has divided the defendants into three groups: Administrative Supervisor Defendants, Facility Supervisor Defendants, and Correctional Officer Defendants. (*See* Doc. 1, ¶¶ 26, 33, 40.) In their motion to dismiss and/or

Strike or, in the Alternative, to Dismiss Plaintiff's Complaint (Doc. 43). The motions have been fully briefed and are ripe for review. For the reasons stated below, the motions to strike are due to be denied. Defendants' motions to dismiss are due to be granted.

## I.    FACTS[2] & PROCEDURAL POSTURE

At the time of the events giving rise to this litigation, McCarley was an inmate at St. Clair Correctional Facility (St. Clair Correctional) in Springville, Alabama. (Doc. 1, ¶ 9.) He transferred to the facility in 2019 to attend a residential substance treatment program. (*Id*. ¶ 9–10.) Once at St. Clair Correctional, however, Plaintiff sought to transfer to a different facility, which an unidentified officer told him would only happen if he dropped out of the residential treatment program. (*Id*. ¶ 11.)

McCarley subsequently dropped the treatment program. But instead of receiving a transfer, on May 17, the Facility Supervisors and Correctional Officers assigned him to general population at St. Clair Correctional. (*Id*. ¶¶ 11–12, 56.) Twice, inmates within general population threatened McCarley with acts of physical

---

strike, the "Administrative Supervisor Defendants" refer to themselves collectively as "ADOC Officials." (*See* Doc. 43, p. 1.) Because it is the defendants' motion pending before this Court, this Court refers to the "Administrative Supervisor Defendants" collectively as "ADOC Officials."

[2] In evaluating a motion to dismiss, this Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012) (quoting *Ironworkers Loc. Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1359 (11th Cir. 2011)). The following facts are, therefore, taken from the allegations contained in Plaintiff's Complaint, and the Court makes no ruling on their veracity.

and sexual violence. (*Id.* ¶¶ 58, 64.) McCarley communicated both threats to the Correctional Officers and renewed his request for a transfer to a different facility. (*Id.* ¶¶ 59–61, 66.) He did not receive the requested transfer. (*Id.* ¶ 67.)

On May 25, an inmate, housed in a different block of St. Clair Correctional, obtained access to McCarley's housing block. (*Id.* ¶ 85.) McCarley contends that, unprovoked, the inmate stabbed him in the chest. (*Id.* ¶ 71.) McCarley lost consciousness from the attack, but when he awoke, he saw unidentified Correctional Officer Defendants, who allegedly refused to render him aid. (*Id.* ¶ 76.) Two inmates carried McCarley to the St. Clair Correctional infirmary. (*Id.* ¶ 78.) Thereafter, he was transferred to the University of Alabama Birmingham hospital and underwent open-heart surgery. (*Id.* ¶ 79.)

McCarley brought his action against the defendants on April 22, 2021. (*See* Doc. 1.) In Counts I, II, and III, he asserts a § 1983 claim of deliberate indifference to a substantial risk of harm in violation of the Eighth Amendment. (Doc. 1, ¶¶ 163–86.) In Count IV, McCarley alleges a negligence claim under Alabama law. (*Id.* ¶¶ 187–92.) The defendants move to strike or dismiss the Complaint. (Doc. Nos. 43, 45.)

## II.    STANDARD OF REVIEW

### A. FED. R. CIV. P. 12(E) & SHOTGUN PLEADINGS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The *Federal Rules of Civil Procedure* further clarify that:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence–and each defense other than a denial—must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b).

Complaints that violate these rules are often referred to as shotgun pleadings. The Eleventh Circuit has identified four rough "categories" of shotgun pleadings that are prohibited:

> [1.] a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint....[2.] a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action....[3. a complaint that] commits the sin of not separating into a different count each cause of action or claim for relief. [4.]...[a complaint] asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Weiland v. Palm Beach Cty. Sheriff's Office,* 792 F.3d 1313, 1321–23 (11th Cir. 2015) (footnotes omitted). Despite the variety of forms that shotgun pleadings may

take, a singular deficiency unites them all: "they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id*. at 1323.

Defendants move to strike the Complaint as a shotgun pleading. (*See* Doc. Nos. 43 & 45.) However, because we dismiss based upon qualified immunity and impermissible fictitious party pleading, the Court declines to consider this grounds of dismissal.

### B. RULE 12(B)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint against the legal standard articulated by Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint "must plead enough facts to state a claim to relief that is plausible on its face." *Ray v. Spirit Airlines, Inc.,* 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stated another way, the factual allegations in the complaint must be sufficient to "raise a right to

relief above the speculative level." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1296 (11th Cir. 2010) (quoting *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (internal quotation marks omitted).

A complaint that "succeeds in identifying facts that are suggestive enough to render [the necessary elements of a claim] plausible" will survive a motion to dismiss. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted). In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id*. If the pleading "contain[s] enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory,'" it satisfies the notice pleading standard. *Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683–84 (11th Cir. 2001)).

## III.   ANALYSIS

Defendants seek to dismiss Plaintiff's Complaint on four grounds: (1) the entire Complaint constitutes a shotgun pleading (Doc. 43, p. 6–8; Doc. 45, p. 5–9),

(2) as to the federal claims, Defendants are entitled to qualified immunity (Doc 43, p. 8–21; Doc. 45, p. 9–26), (3) as to the federal claims, Plaintiff has failed to state a claim upon which relief can be granted, (4) as to the state law claim of negligence, Defendants are entitled to state agent immunity (Doc. 43, p. 21–24; Doc. 45, p. 26–29), and (5) Count II, a federal claim brought against fictitious defendants, constitutes impermissible fictitious party pleading (Doc. 45, p. 29–30).

This Court finds that Defendants are entitled to qualified immunity as to Counts I and III. As to Count II, this Court agrees that the federal claim against "Unknown Correctional Officer 2 and 3" is an impermissible fictitious party pleading and is due to be struck. Because there are no remaining federal claims, this Court declines to exercise supplemental jurisdiction over the state law claim of negligence and, thus, does not consider whether Defendants are entitled to state agent immunity.

## A. THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

In Counts I, II, and III of the Complaint, McCarley asserts that Defendants acted with deliberate indifference in violation of the Eighth Amendment to the United States Constitution under 42 U.S.C. § 1983. As a complete defense to this allegation, each group of defendants asserts qualified immunity.

"The purpose of [qualified] immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Qualified immunity does not take into account an officer's alleged subjective intent; instead, it "turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). Thus, to overcome a public official's entitlement to qualified immunity, a plaintiff must be able to establish not only that the public official acted wrongfully, but also be able to point the court to law existing at the time of the alleged violation that provided "fair warning" that the conduct of the defendants was illegal. *Willingham v. Loughnan*, 321 F.3d 1299, 1301 (11th Cir. 2003).

To have qualified immunity, officers must demonstrate that they were acting in the scope of their discretionary authority. *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004). "To determine whether an official was engaged in a discretionary function, [courts] consider whether the acts the official undertook 'are of a type that fell within the employee's job responsibilities.'" *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) (citing *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)). "[T]he determination that an officer was acting within his discretionary authority is quite a low hurdle to clear." *Godby v. Montgomery County Bd. of Educ.*, 996 F. Supp. 1390, 1401 (M.D. Ala. 1999). Here, Plaintiff's allegations arise from Defendants' statutory duty to operate a prison. *See* Ala. Code §§ 14-1-1.1; 14-1-1.3; 14-1-1.5; 14-1-4. Because Defendants were carrying out their respective statutory duty to operate the prison, they were acting within the scope of their discretionary authority.

After determining that officers acted within their discretionary authority, courts use a two-part test to determine whether qualified immunity is proper. "First, the plaintiff must establish that the defendant violated a constitutional right. Then, the plaintiff must show that the violation was clearly established." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007). Courts can consider these prongs in either order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("The judges of the

district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

      1.  *The ADOC Officials are entitled to qualified immunity because McCarley has failed to allege a violation of a Constitutional right.*

It is well established that prison officials must protect prisoners from inmate-on-inmate violence. *Dickinson v. Cochran*, 833 F. App'x 268, 271 (11th Cir. 2020). However, not every injury "translates into constitutional liability." *Id.* (quoting *Framer v. Brennan*, 511 U.S. 825, 834 (1994)). Instead, the Eighth Amendment is only implicated when prison officials are deliberately indifferent to a substantial risk of serious harm. *Id.* This analysis is a three-fold inquiry, considering: (1) the subjective knowledge of the actor, (2) that was disregarded, and (3) conduct that is more than gross negligence. *Id.* at 272.

However, the ADOC Officials are supervisors. "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir.2003). Thus, to hold a supervisor liable for constitutional violations, a plaintiff must show that either (1) the supervisor directly

participated in the unconstitutional conduct or (2) a "causal connection" exists between the supervisor's actions and the constitutional violation alleged. *Id*. McCarley brings forth no allegations of direct participation by the ADOC Officials in any unconstitutional conduct. (*See* Doc. 48, p. 23–24 (suggesting that McCarley need not bring forth evidence of direct participation when alleging deliberate indifference).) Thus, this Court need only consider whether McCarley has alleged a causal connection between the ADOC Officials' actions and the constitutional violation alleged.

A causal connection can be established when: (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so"; (2) "a supervisor's custom or policy results in deliberate indifference to constitutional rights"; or (3) "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1048 (11th Cir. 2014) (internal quotation marks omitted) (alterations accepted); *accord Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009) (per curium). The conduct at issue must be "obvious, flagrant, rampant, and of continued duration." *Id*. Put simply, the standard for holding supervisors

liable in their individual capacities for the actions of their subordinates is "extremely rigorous." *Id.*

In establishing a causal connection through a history of widespread abuse and a failure to act, there are two forms of claims. First, a plaintiff may allege that there is such a widespread risk of generalized violence such that "violence was the norm or something close to it." *Marbury v. Warden*, 936 F.3d 1227, 1214 (11th Cir. 2019). Second, a plaintiff may point to "specific features of a facility or its population [that] render[] it particularly violent." *E.g.*, *Dickinson v. Cochran*, 833 F. App'x 268, 275 (11th Cir. 2020). McCarley fails to establish a causal connection through either avenue.

First, McCarley's allegations of generalized violence in St. Clair Correctional fail to rise to the level required by the Eleventh Circuit wherein "violence is the norm" such that ADOC Officials, as supervisors of the facility, were deliberately indifferent to it. *See generally*, *e.g.*, *Purcell v. Toombs Cty.*, 400 F.3d 1313, 1321 (11th Cir. 2005) (collecting cases wherein an "excessive risk of inmate-on-inmate violence" was established). Taking McCarley's allegations as true, the conditions within St. Clair Correctional, "while not ideal, . . . [are] less severe than what would be sufficient to rise to the level of demonstrating objectively a substantial risk of serious harm to inmates." *Id.*

Second, McCarley has similarly failed to allege specific aspects of St. Clair Correctional that would "render[] it particularly violent." *Dickinson*, 833 F. App'x at 275. *Dickerson* shows how a plaintiff may establish specific aspects of a facility that create a causal connection and impose supervisory liability. In *Dickerson*, an inmate brought § 1983 claims against both the county sheriff and the warden of the facility for their deliberate indifference after he was stabbed by his cellmate. *Id.* at 628. There, the plaintiff relied on a report by the Department of Justice which established that the facility lacked a "meaningful classification system" for inmates and "conducted too few shakedowns" for contraband. *Id.* at 269–70. These allegations of specific deficiencies in prison procedure were sufficient to enable that complaint to survive a motion to dismiss. *Id.* at 273, 275; *see also*, *e.g.*, *Cottone*, 326 F.3d at 1359 (11th Cir. 2003) (finding qualified immunity inappropriate where the relevant actors enabled a "total lack of monitoring and supervision").

While McCarley's allegations are comparable to those brought by the plaintiff in *Dickerson*, they differ in an important respect. In *Dickerson*, the facility lacked a classification system and lacked—or did not implement—procedures for discovering contraband. Here, St. Clair Correctional has implemented ADOC's extensive classification procedure. (*See generally* Doc. 1, ¶¶ 45–50 (describing

ADOC's classification system).) Additionally, ADOC has, as McCarley recognizes, a "zero-tolerance" policy for contraband. (*Id*. ¶ 136.)

The ADOC Officials are entitled to qualified immunity because McCarley has failed to establish that they were deliberately indifferent to his constitutional rights. Therefore, the ADOC Officials' motion to dismiss Count III of McCarley's Complaint is due to be granted.

> 2. *The Facility Supervisors are entitled to qualified immunity because the Facility Supervisors did not act in violation of clearly established law.*

McCarley asserts that the Facility Supervisors were deliberately indifferent by failing to provide adequate security and supervision, to ensure that inmates were appropriately housed, and to ensure that complaints and threats were appropriately documented and addressed. (Doc. 1, ¶¶ 181–83.) To be deliberately indifferent to the risk of harm posed by McCarley's fellow inmates, the Facility Supervisors must have been "subjectively aware of the substantial risk of serious harm in order to have had a sufficiently culpable state of mind." *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (internal citations omitted). Assuming *arguendo* that the risks posed at St. Clair Correctional are "a serious risk of harm," McCarley must establish that prison officials were aware of specific facts from which: (1) an inference could be

drawn that a substantial risk of serious harm exists and (2) the Facility Supervisors actually drew that inference. *Id.*

Establishing that the defendants were on notice of particularized safety concerns is essential to a claim of deliberate indifference. For example, in *Carter*, the Eleventh Circuit affirmed a district court's grant of qualified immunity after an inmate was stabbed by his cellmate. *Carter*, 352 F.3d at 1350. Prison officials transferred the plaintiff to administrative segregation pending an investigation. While in administrative segregation, the plaintiff requested a reassignment because his cellmate was of a higher-level security status. *Id.* at 1348. The plaintiff reported the threats he received from his cellmate and his cellmate's other disorderly behavior to facility supervisors. *Id.* Ten days later, the cellmate stabbed the plaintiff. *Id.* Yet the facility supervisors were entitled to qualified immunity because "there must be much more than mere awareness of [an inmate's] generally problematic nature." *Id.* at 1349; *see also Washington v. Warden*, 847 F. App'x 734, 738 (11th Cir. 2021), *cert. denied sub nom. Washington v. Taylor*, 142 S. Ct. 250, 211 (2021) (explaining that "even with a specific threat," qualified immunity is still appropriate where a risk was "merely possible" and not "substantial").

McCarley has failed to allege that the Facility Supervisors were on notice of any particularized risk of harm to him. As the plaintiff in *Carter* sought reassignment

based on safety concerns related to his cellmate, McCarley seems to diasgree with his assignment to the N-block, citing similar safety concerns. However, "[t]he unfortunate reality is that 'threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm.'" *Marbury*, 936 F.3d at 1236 (internal citations omitted).

McCarley's allegations of improper prison policies regarding threat reporting and contraband location are similarly unavailing. (Doc. 1, ¶¶ 181–83.) McCarley has failed to "describe any of the policies that were in place, the sort of policies that should have been in place, or how those policies could have prevented [the constitutional violation]." *See Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). It is well established in this Circuit that "conclusory assertion[s] of a custom or policy resulting in deliberate indifference" are insufficient to defeat qualified immunity. *Doe v. Sch. Bd. Of Broward Cnty., Fla.*, 604 F.3d 1248, 1267 (11th Cir. 2010). Therefore, McCarley's conclusory allegations of insufficient policies are inadequate to establish a claim of deliberate indifference.

The Facility Supervisors are entitled to qualified immunity because McCarley has failed to establish that they were deliberately indifferent to his constitutional rights. Therefore, the Facility Supervisors' motion to dismiss Count III of McCarley's Complaint is due to be granted.

3. *The Correctional Officers are entitled to qualified immunity because Correctional Officers did not act in violation of clearly established law.*

McCarley asserts that the Correctional Officers were deliberately indifferent by failing to respond to his concerns regarding potential threats from inmates, properly supervise inmate movement, and detect contraband.  (Doc. 1, ¶¶ 166–71.) The Correctional Officers are entitled to qualified immunity as to Count I because they did not act in violation of clearly established law.

To demonstrate that a right is "clearly established," a plaintiff may point to a "materially similar case," identify a "broader, clearly established principle," or show that "the conduct at issue so obviously violated the Constitution that prior case law is unnecessary." *J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1259–60 (11th Cir. 2018) (citation and internal quotation marks omitted); *see also Maddox v. Stephens*, 727 F.3d 1109, 1121 (11th Cir. 2013). In considering whether a violation is "clearly established," relevant law "consists of holdings of the Supreme Court, the Eleventh Circuit, or the highest court of the relevant state." *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019). A materially similar case "need not be directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *J W by & through Tammy Williams*, 904 F.3d at 1259 (citation and internal quotation marks omitted).

The law is not clearly established regarding when reports of threats rise to a level as to demand a response from correctional officers. *Compare Washington*, 847 F. App'x at 738 (explaining that "even with a specific threat," qualified immunity is still appropriate where a risk was "merely possible" and not "substantial"), *with Rodriquez v. Sec'y for Dep't of Corrs.*, 508 F.3d 611, 620 (11th Cir. 2007) (finding qualified immunity inappropriate when an inmate reported a "gang-related threat" against his life to correctional officers). Yet where a threat is specific regarding potential actors and motive, it is more likely that qualified immunity is inappropriate. *E.g.*, *id.*

McCarley has failed to allege the specific types of threats wherein a correctional officer would have notice that a failure to respond would violate clearly established law. McCarley first alleges that he told Correctional Officers that an inmate "threatened to harm [him]" in his cellblock. (Doc. 1, ¶ 58.) However, there's no description of the type of threat for this Court to discern whether the threat was not "merely possible" but "substantial." *Washington*, 847 F. App'x at 738. The second threat McCarley reported was from an unknown inmate who reportedly stated "they 'had a white boy for sale.'" *Id.* ¶ 64. However, unlike the threat in *Rodriquez* which identified both the motive and the source of the threat, this threat

lacks the critical information to put the Correctional Officers on notice that a response is mandated by clearly established law.

McCarley's remaining assertions of deliberate indifference are conclusory statements regarding the administration of prison policies. For example, McCarley asserts that the Correctional Officers violated his Constitutional rights by "failing to monitor the prison" but McCarley fails to describe any policies in place that Correctional Officers violated regarding prison monitoring or the effect such policies might have on his injury. *See generally Franklin*, 738 F.3d at 1251 (requiring assertions of policies that were in place, should have been in place, or how policies would've prevented [the constitutional violation]" to defeat qualified immunity). Therefore, McCarley's conclusory allegations of insufficient policies and/or policy administration are inadequate to establish that the Correctional Officers violated clearly established law.

The Correctional Officers are entitled to qualified immunity because McCarley has failed to establish that they were deliberately indifferent to his constitutional rights. Therefore, the Correctional Officers' motion to dismiss Count I of McCarley's Complaint is due to be granted.

B. COUNT II DOES CONSTITUTE IMPERMISSIBLE FICTITIOUS PARTY PLEADING.

The remaining federal claim is Count II of McCarley's Complaint which alleges a deliberate indifference claim against fictitious parties, Unknown Correctional Officers 2 and 3. (*See* Doc. 1, p. 43.) The Correctional Officers contend that Count II is due to be dismissed as it constitutes impermissible fictitious party pleading (Doc. 45, p. 29–30). This Court agrees that Count II is due to be dismissed.

"As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). There is a limited exception to this prohibition where a plaintiff who fails to identify a party by name has otherwise described the party with sufficient detail. *Dean v. Barber*, 951 F.2d 1210, 1215–16 (11th Cir. 1992). Yet, this exception is narrow, and motions to dismiss claims against fictitious parties should be granted where there is not a description that sufficiently identifies the party being sued. *See*, *e.g.*, *Richardson*, 598 F.3d at 738 (holding that the district court correctly dismissed claims against "John Doe (Unknown Legal Name), Guard, Charlotte Correctional Institute" as improper claims against a fictitious party); *New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1097 (11th Cir. 1997) (finding no error in the district court's striking of fictitious parties where the parties were identified as "A, B, and C" and were described as "those persons, corporations or other legal entities who or which employed Plaintiff on the occasion of Plaintiff's injury").

Here, McCarley has failed to provide sufficiently detailed descriptions of the "Unknown Correctional Officers 2 and 3" that would place his allegations within the ambit of this narrow exception. He described them as follows:

> Defendant Unknown Correctional Officers 2 and 3 were employed at St. Clair Prison during the time when Mr. McCarley was at the prison, and their responsibilities included monitoring prison inmates and acting to ensure their safety while in custody. Defendant Unknown Correctional Officers 2 and 3 observed Mr. McCarley lying on the prison floor after being attacked but refused to render him aid.
> (Doc. 1, ¶ 39).

Because this description fails to identify any of the putative defendants with any particularity, the general rule applies, not the exception. Accordingly, the Defendants' motion to dismiss the claims against "Unknown Correctional Officers 2 and 3" is due to be granted.

### C. THIS COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION OVER COUNT IV AND RENDERS NO DECISION AS TO DEFENDANTS' ENTITLEMENT TO STATE AGENT IMMUNITY.

Because all McCarley's federal claims are due to be dismissed, the only remaining claim is one of negligence arising under Alabama law. The Defendants all assert they are entitled to state agency immunity. (Doc. 43, p. 21–24; Doc. 45, p. 26–29.) This Court declines to exercise supplemental jurisdiction over the remaining state law claim. As such, this Court does not decide whether the Defendants' are entitled to state agency immunity.

"Federal courts are courts of limited jurisdiction," and the Court's analysis must begin by considering whether there is subject matter jurisdiction over the remaining state law claims. *Jackson–Platts v. General Elec. Capital Corp.*, 727 F.3d 1127, 1133–34 (11th Cir.2013). This case implicates the Court's supplemental jurisdiction, codified at 28 U.S.C. § 1367 ("§ 1367"). "The statute reflects a dichotomy between a district court's power to exercise supplemental jurisdiction, § 1367(a), and its discretion not to exercise such jurisdiction, § 1367(c)." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 742 (11th Cir.2006).

Supplemental jurisdiction entails a two-step inquiry where the Court must first determine whether it can exercise its supplemental jurisdiction and then whether it should exercise that jurisdiction. *See Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta*, 701 F.3d 669, 679 n. 7 (11th Cir.2012) (noting the different standards of review for these aspects of supplemental jurisdiction). Section 1367(a) provides the power of supplemental jurisdiction only when the claims "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). For the Court to have the power to exercise supplemental jurisdiction, the claims must "'derive from a common nucleus of operative fact.'" *Upper Chattahoochee Riverkeeper Fund, Inc.*, 701 F.3d at 679 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). If the Court

has the power to exercise supplemental jurisdiction as specified in § 1367(a), it must

nonetheless consider § 1367(c) to determine whether jurisdiction over the state claim

is appropriate. *See Parker*, 468 F.3d at 743.

In discussing the first step of that analysis, i.e., whether a district court can

exercise supplemental jurisdiction, the Eleventh Circuit explained:

> We take the nucleus of facts on which the federal question claims are
> based and compare it to the nucleus of facts on which the state law
> claims are based. We do not look at the results that may flow from the
> implications of finding that supplemental jurisdiction does not exist. It
> is not a results-oriented analysis, but a fact-oriented one.
> *Upper Chattahoochee Riverkeeper Fund, Inc. v. City of A*tlanta, 701 F.3d
> 669, 679 (11th Cir. 2012).

As described above, this Court finds that the claims arising under federal law

are due to be dismissed. As such, there are no federal claims with a shared "nucleus

of operative facts" upon which to base supplemental jurisdiction. Therefore,

supplemental jurisdiction is improper, and this Court need not reach the second step

of the analysis, i.e., whether it should exercise supplemental jurisdiction.

Accordingly, McCarley's negligence claims are due to be dismissed without

prejudice such that he may refile the action in the appropriate forum. *See* Fed. R.

Civ. P. 12(h)(3).

## IV.   CONCLUSION

The Court will enter an Order consistent with this Memorandum of Opinion.

**DONE** and **ORDERED** on March 24, 2022.

L. Scott Coogler
United States District Judge

206888