FILED

2023 Aug-21  PM 04:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **JOHN MCCARLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:21-CV-00570-LSC** |
| | ) | |
| **JEFFERSON DUNN, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## THE ADOC OFFICIALS' MOTION TO STRIKE OR, IN THE
## ALTERNATIVE, TO DISMISS THE SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

Table of Contents ................................................................................ i

Table Of Authorities ........................................................................... ii

Introduction ........................................................................................1

Plaintiff's Allegations .........................................................................2

Legal Standard ...................................................................................5

Argument............................................................................................6

    I.     Plaintiff Fails to Allege a Constitutional Violation by any ADOC Official. ..........................................................................6

    II.    The Doctrine of Qualified Immunity Bars Plaintiff's Section 1983 Claim Against the ADOC Officials. ........................................15

    III.   Plaintiff's State Law Negligence Claim is Due to be Dismissed........19

Conclusion ........................................................................................23

Certificate of Service .........................................................................24

## TABLE OF AUTHORITIES

**Cases**

Alexander v. Univ. of N. Fla.,
  39 F.3d 290 (11th Cir. 1994) ................................................................... 16, 17

Anderson v. Creighton,
  483 U.S. 635 (1987) .................................................................................16

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) ................................................................. 5, 6, 7, 15

Belcher v. City of Foley,
  30 F.3d 1390 (11th Cir. 1994) ..................................................................7

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) ...................................................................................5

Brosseau v. Haugen,
  543 U.S. 194 (2004) .................................................................................18

Carpenter v. Tillman,
  948 So. 2d 536 (Ala. 2006) ......................................................................21

City of Tahlequah, Okla. v. Bond,
  142 S. Ct. 9 (2021) ...................................................................................18

Clark v. City of Atlanta, Ga.,
  544 F. App'x 848 (11th Cir. 2013) ...........................................................6

Conley v. Gibson,
  355 U.S. 41 (1957) .....................................................................................5

Cook v. Corizon, LLC,
  No. 2:17-CV-178-SMD, 2019 WL 2076392 (M.D. Ala. May 10, 2019) ..............6

Cottone v. Jenne,
  326 F.3d 1352 (11th Cir. 2003) .............................................................7, 18

Courson v. McMillian,
  939 F.2d 1479 (11th Cir. 1991) ...............................................................16

Cox v. Nobles,
    15 F.4th 1350 (11th Cir. 2021)...................................................................12

Daniels v. Felton,
    823 F. App'x 787 (11th Cir. 2020)..............................................................9

Dickinson v. Cochran,
    833 F. App'x 268 (11th Cir. 2020)...........................................................10

Ex parte Butts,
    775 So. 2d 173 (Ala. 2000) ........................................................................20

Ex parte Estate of Reynolds,
    946 So. 2d 450 (Ala. 2006) ................................................................ 20, 21

Ex parte Gilland,
    274 So. 3d 976 (Ala. 2018) .......................................................................21

Ex parte Hugine,
    256 So. 3d 30 (Ala. 2017) ..........................................................................22

Ex parte Moulton,
    116 So. 3d 1119 (Ala. 2013) ......................................................................22

Farmer v. Brennan,
    511 U.S. 825 (1944) ............................................................................ 8, 11, 12

Franklin v. Curry,
    738 F.3d 1246 (11th Cir. 2013)...................................................................5

Gaines v. Wardynski,
    871 F.3d 1203 (11th Cir. 2017)..................................................................17

Giambrone v. Douglas,
    874 So. 2d 1046 (Ala. 2003) .....................................................................20

Grider v. City of Auburn,
    618 F.3d 1240 (11th Cir. 2010)..................................................................17

Hale v. Tallapoosa Cnty.,
    50 F.3d 1579 (11th Cir. 1995)............................................................ 6, 11, 12

Harrison v. Culliver,
  746 F.3d 1288 (11th Cir. 2014)...................................................... 7, 9, 15

Hartley v. Parnell,
  193 F.3d 1263 (11th Cir. 1999).............................................................7

Jones v. Fransen,
  857 F.3d 843 (11th Cir. 2017).............................................................18

Lane v. Philbin,
  835 F.3d 1302 (11th Cir. 2019).............................................................8

Lee v. Ferraro,
  284 F.3d 1188 (11th Cir. 2002).................................................... 16, 17

Lemley v. Wilson,
  178 So. 3d 834 (Ala. 2015) ...............................................................22

Marbury v. Warden,
  936 F.3d 1227 (11th Cir. 2019)...................................................... 8, 9, 11

Martin v. Arnold,
  643 So.2d 564 (Ala. 1994) ...............................................................22

Mitchell v. Forsyth,
  472 U.S. 511 (1985) ...........................................................................15

Owens v. Sec'y, Fla. Dep't of Corr.,
  812 F. App'x 861 (11th Cir. 2020)........................................................9

Pearson v. Callahan,
  555 U.S. 223(2009) ...........................................................................17

Pilcher v. Dunn,
  Case No: 4:21-cv-00204-ACA, Doc. 112).........................................14

Purcell ex rel. Estate of Morgan v. Toombs Cnty.,
  400 F.3d 1313 (11th Cir. 2005)............................................................9

Raney v. Allstate Ins. Co.,
  370 F.3d 1086 (11th Cir. 2004)..........................................................19

iv

Riva-Villegas v. Cortesluna,
    142 S. Ct. 4 (2021) ...........................................................................................18

Rodriguez v. Sec'y for Dep't of Corrs.,
    508 F.3d 611 (11th Cir. 2007)...........................................................................11

Russo v. Jefferson Dunn, et al.
    2020 WL 1285914 (N.D. Ala. March 17, 2020)................................................11

Saucier v. Katz,
    533 U.S. 194 (2001) ..........................................................................................15

Shook v. Dunn,
    No. 2:18-cv-1048-MHT, 2020 WL 1492841 (M.D. Ala. Mar. 25, 2020) ...........22

Stallworth v. Wilkins,
    802 F. App'x 435 (11th Cir. 2020)......................................................................7

Swain v. Junior,
    961 F.3d 1276 (11th Cir. 2020)......................................................................8, 11

Wade v. U.S.,
    13 F.4th 1217 (11th Cir. 2021).........................................................................19

Williams v. Bennett,
    689 F.2d 1370 (11th Cir. 1982).........................................................................13

Woods v. Comm'r., Ala. Dept. of Corr.,
    951 F.3d 1288 (11th Cir. 2020).........................................................................19

**Rules and Statutes**

28 U.S.C. § 1367(c)(3).............................................................................................19

Fed. R. Civ. P. 12 ......................................................................................................1

Fed. R. Civ. P. 12(b)(6).............................................................................................2

Fed. R. Civ. P. 8(a)(2)...............................................................................................5

Pursuant to Rule 12 of the <u>Federal Rules of Civil Procedure</u>, Defendants Jefferson Dunn ("<u>Dunn</u>"), Steve Watson ("<u>Watson</u>"), Arnaldo Mercado ("<u>Mercado</u>"), and Edward Ellington ("<u>Ellington</u>," and, collectively with Dunn, Watson, and Mercado, the "<u>ADOC Officials</u>") hereby submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. No. 91).

## INTRODUCTION

Plaintiff's Second Amended Complaint attempts to hold the ADOC Officials, who are current and former supervisory officials with the Alabama Department of Corrections ("<u>ADOC</u>"), personally liable for the alleged criminal acts of an inmate resulting in Plaintiff's alleged injuries. (Doc. No. 91, ¶¶ 15, 19-21). Importantly, Plaintiff's Second Amended Complaint includes no allegations that any individual ADOC Official personally participated, witnessed, ordered, or encouraged the alleged assault, nor does Plaintiff allege any individual ADOC Official was even present at St. Clair Correctional Facility ("<u>St. Clair</u>") when the alleged assault occurred. Instead, Plaintiff asserts claims against the ADOC Officials solely based on their respective positions of employment within ADOC. Plaintiff fails to (and cannot) allege any facts supporting his individual-capacity claim against the ADOC Officials.

1

Plaintiff's Second Amended Complaint is subject to dismissal for at least the following four (4) reasons:

> (1)    Plaintiff fails to allege a plausible 42 U.S.C. § 1983 ("section 1983") claim against the ADOC Officials;
>
> (2)    Qualified immunity protects the ADOC Officials from Plaintiff's section 1983 claim;
>
> (3)    State-agent immunity bars Plaintiff's state-law negligence claim, to the extent Plaintiff alleges that claim against the ADOC Officials; and
>
> (4)    Plaintiff fails to plausibly allege a state-law negligence claim against the ADOC Officials.

For these reasons, the Second Amended Complaint and all claims asserted against the ADOC Officials should be dismissed, with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PLAINTIFF'S ALLEGATIONS

Plaintiff wrongfully seeks to impose personal liability on the ADOC Officials for the alleged criminal action of another inmate. However, Plaintiff fails to plausibly allege that any ADOC Official played a role in the incidents alleged in the Second Amended Complaint. In May 2019, Plaintiff, "a low-risk inmate with 'minimum-out' custody," arrived at St. Clair, a "close custody" facility, to attend ADOC's "only residential substance abuse treatment program." (Doc. No. 91, ¶¶ 44-48). According to the Second Amended Complaint, ADOC maintained a policy for "[i]nmates participating in the residential substance abuse treatment program" to be

2

housed "separate" from St. Clair's general population inmates. (Id., ¶ 46). However, Plaintiff alleges that St. Clair staff ignored this policy and failed to segregate Plaintiff from other St. Clair inmates. (Id.). Nonetheless, despite Plaintiff's allegation that he lacked knowledge that the program occurred at St. Clair, Plaintiff voluntarily entered the substance-abuse treatment program. (Id., ¶ 47).

After learning of St. Clair's status as a "maximum-security facility," Plaintiff allegedly requested a transfer to another facility. (Id., ¶ 54). Plaintiff alleges that "[t]he officer overseeing the drug treatment program" informed Plaintiff that ADOC would transfer him to a minimum-security facility if he dropped out of the substance-abuse treatment program and that, in the interim, Plaintiff would be "placed in administrative segregation." (Id., ¶ 50). Thus, Plaintiff claims he dropped out of the substance-abuse treatment program in order to transfer to a minimum-security institution. (Id., ¶ 51). However, Plaintiff alleges he was wrongly moved to a general population cell block, where he received threats from other inmates. (Id., ¶¶ 52, 59).

Plaintiff alleges he asked on-site ADOC staff (admittedly not any ADOC Official) to transfer him out of St. Clair or to St. Clair's "faith/honor dorm" for his safety. (Id., ¶¶ 59-60, 67-70). Plaintiff claims these staff members ignored his transfer requests. (Id.). Plaintiff then alleges that, on May 25, 2019, another St. Clair inmate "stabbed him in the chest." (Id., ¶¶ 73-76). Plaintiff claims that, after

3

he regained consciousness, other inmates transported him to St. Clair's infirmary, where medical providers transferred Plaintiff to UAB Hospital for surgery.  (Id., ¶¶ 80-84).

Throughout the Second Amended Complaint, Plaintiff lumps the ADOC Officials and other individual defendants together as "Supervisor Defendants," and "Defendants."  (See, e.g., id., ¶¶ 19, 21, 39, 51, 55, 58, 60, 64, 71, 86, 96, 101, 112, 118, 122, 126-129, 131, 138, 144, 145, 146, 153, 154, 155, 158, 165, 169, 176-190, 196, 199, 202, 204, 242, 328-330, 332-340).  While Plaintiff makes a cursory attempt to include separate allegations against each ADOC Official, these allegations amount to conclusory repetitions of vague assertions, with no specific facts to support liability on the part of each ADOC Official.  (Doc. No. 191, ¶¶ 243-272). The Second Amended Complaint, like previous iterations of Plaintiff's pleading, seeks to hold the ADOC Officials personally liable simply based upon their status as supervisory officials with the ADOC.  (Id., ¶¶ 23-26).

The Second Amended Complaint purports to assert the following two (2) counts against the ADOC Officials:

> **Count III**:  Against "Supervisor Defendants," a section 1983 claim for Failure to Prevent Harm (Id., ¶¶ 241-330); and
>
> **Count IV**:  Against "All Defendants," a state-law negligence claim (Id., ¶¶ 331-340).

4

For the reasons articulated below, the Second Amended Complaint fails to allege a plausible claim against the ADOC Officials and should be dismissed with prejudice.

## LEGAL STANDARD

Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

In addressing a pleading like the Second Amended Complaint in this action, when a plaintiff relies upon vague, conclusory allegations, a court must "first separat[e] out the complaint's conclusory legal allegations and then determin[e] whether the remaining well-pleaded factual allegations, accepted as true, 'plausibly give rise to an entitlement to relief.'" Franklin v. Curry, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting Iqbal, 556 U.S. at 679). The plausibility standard "asks for more

5

than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. Stripped of its labels, conclusions, and formulaic recitation of elements, Plaintiff's Second Amended Complaint lacks well-plead factual allegations. Id. Because Plaintiff already received two opportunities to replead his claims, the Court should dismiss the claims asserted against the ADOC Officials with prejudice.

## ARGUMENT

### I.  PLAINTIFF FAILS TO ALLEGE A CONSTITUTIONAL VIOLATION BY ANY ADOC OFFICIAL.

According to the Second Amended Complaint, Plaintiff believes that the ADOC Officials—although not present during any attack on Plaintiff—should have personally prevented Plaintiff's alleged injuries. To plausibly allege this form of individual capacity liability, Plaintiff must, at a minimum, allege personal involvement by the ADOC Officials in a violation of Plaintiff's rights. "Personal involvement by an individual-capacity defendant is an indispensable element of a valid legal claim," and "only exists when the individually named defendant performed the acts or omissions at issue himself or directed a subordinate to do so." Cook v. Corizon, LLC, No. 2:17-CV-178-SMD, 2019 WL 2076392, *3 (M.D. Ala. May 10, 2019); see also Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1582 (11th Cir. 1995); Clark v. City of Atlanta, Ga., 544 F. App'x 848, 857 (11th Cir. 2013). Thus, to state a claim against the ADOC Officials personally, Plaintiff must plead that they, "through [their] own individual actions . . . violated the constitution." Cook, 2019

6

WL 2076392, at *3; (emphasis added); <u>see also</u> <u>Iqbal</u>, 556 U.S. at 676-77.  Plaintiff cannot allege that any ADOC Official personally participated in any violation of his rights, or even their presence at St. Clair when the alleged incident occurred.  Instead, Plaintiff seeks to hold the ADOC Officials personally liable for his injuries based solely on their status as supervisors.

However, "'[i]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability.'" <u>Harrison v. Culliver</u>, 746 F.3d 1288, 1299 (11th Cir. 2014) (quoting <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003)); <u>Hartley v. Parnell</u>, 193 F.3d 1263, 1269 (11th Cir. 1999); <u>Belcher v. City of Foley</u>, 30 F.3d 1390, 1396 (11th Cir. 1994).  "[A] plaintiff seeking to hold a supervisor liable for constitutional violations must show that the supervisor either participated directly in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." <u>Id.</u> at 1298 (citing <u>Cottone</u>, 326 F.3d at 1360).  "[T]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." <u>Cottone</u>, 326 F.3d at 1360, abrogation in part on other grounds recognized by <u>Stallworth v. Wilkins</u>, 802 F. App'x 435 (11th Cir. 2020); <u>see also</u> <u>Iqbal</u>, 556 U.S. at 677 ("In a § 1983 suit . . . – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer.  Absent

7

vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

"A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment if [the official] is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury." Marbury v. Warden, 936 F.3d 1227, 1233 (11th Cir. 2019). "To establish a deliberate-indifference claim, a plaintiff must make both an objective and a subjective showing." Swain v. Junior, 961 F.3d 1276, 1285 (11th Cir. 2020) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1944)). The first element, whether a substantial risk of harm existed, involves an objective assessment and requires the plaintiff to allege "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety." Marbury, 936 F.3d at 1233 (quoting Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2019) (internal citations omitted)). The second element, the subjective showing, requires a plaintiff to establish a defendant's deliberate indifference to the risk of serious harm by "making three sub-showings: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.'" Swain, 961 F.3d at 1285 (quoting Lane, 835 F.3d at 1308). Under this well-established law, deliberate indifference sets a high bar for Plaintiff.

This Court already found that Plaintiff's original Complaint failed to provide well-pleaded factual allegations meeting the objective prong, i.e., alleging

8

"conditions [at St. Clair] that were extreme and posed an unreasonable risk of serious injury to his future health or safety." Marbury, 936 F.3d at 1233; (Doc. No. 54 at 12, holding that Plaintiff's "allegations of generalized violence in St. Clair Correctional fail to rise to the level required by the Eleventh Circuit"). The Eleventh Circuit recently held, in a case involving St. Clair, that a plaintiff must show "'more than a generalized awareness of risk' to make out a deliberate-indifference claim." Id. at 1234; see also Harrison, 746 F.3d at 1299-1300. Instead, "[t]o establish deliberate indifference based on a generalized risk, the plaintiff must show 'that serious inmate-on-inmate violence was the norm or something close to it.'" Marbury, 936 F.3d at 1214 (quoting Purcell ex rel. Estate of Morgan v. Toombs Cnty., 400 F.3d 1313, 1320 (11th Cir. 2005)); Daniels v. Felton, 823 F. App'x 787, 790 (11th Cir. 2020) (affirming summary judgment for prison officials where plaintiff inmate failed to "identify any risk of harm known to the defendants beyond the generalized danger of housing rival gang members in the same prison"); Owens v. Sec'y, Fla. Dep't of Corr., 812 F. App'x 861 (11th Cir. 2020) (district court properly granted summary judgment where defendant officer "might have been aware that a general risk of inmate violence existed in Florida prisons"). Plaintiff cannot meet this standard.

Plaintiff attempts to plead around Marbury by making general and conclusory allegations regarding the ADOC Officials' alleged failures to address the conditions

9

at St. Clair through inmate classification and housing, staffing and supervision, and control of contraband weapons and inmate movement. (Doc. No. 91, ¶ 96). However, again, the Court already rejected the same or similar allegations in Plaintiff's original pleading. (Doc. No. 54 at 13 (distinguishing Plaintiff's allegations from those in Dickinson v. Cochran, 833 F. App'x 268, 271 (11th Cir. 2020)). Plaintiff's Second Amended Complaint contains no allegations to undermine this Court's previous ruling.

Plaintiff generally alleges that the ADOC Officials knew of the "history of inmate-on-inmate violence," the lack of "meaningful[]" classification and contraband policies, inadequate staffing and inmate supervision, and overcrowded conditions at St. Clair. Plaintiff points to the ADOC Officials' awareness of the "DOJ Report," "EJI Letter," "regular internal reports," and "previous prisoner litigation" to establish such knowledge. (Doc. No. 91, ¶¶ ¶¶ 53-56, 100-111, 142-143, 245, 254, 262, 268, 276, 283). As an initial matter, Plaintiff's allegation that the ADOC Officials received "regular internal reports," without providing any factual basis as to what kind of information the reports contained, or when (if ever) any ADOC Official received such "report," cannot establish each ADOC Official's knowledge of a substantial risk of harm. Id. For the same reasons, a blanket reference to "previous prisoner litigation" regarding generalized conditions at St. Clair cannot support a claim against any of the ADOC Officials in their individual

10

capacities. Id.[1] Thus, Plaintiff fails to plausibly allege with well-pleaded facts that the ADOC Officials possessed subjective knowledge of a risk of serious harm at St. Clair prior to or at the time of the May 25, 2019, incident involving Plaintiff.

Moreover, to establish the subjective prong of a deliberate indifference claim, "[a] plaintiff must prove that the defendant acted with a 'sufficiently culpable state of mind.'" Swain, 961 F.3d at 1288 (quoting Farmer, 511 U.S. at 834). This culpable state of mind exceeds malpractice or ordinary negligence and "is in fact akin to 'subjective recklessness as used in the criminal law.'" Id. (quoting Farmer, 511 U.S. at 839-40). "Finally, the plaintiff must show a 'necessary causal link' between the officer's failure to act reasonably and the plaintiff's injury." Marbury, 936 F.3d at 1233 (quoting Rodriguez v. Sec'y for Dep't of Corrs., 508 F.3d 611, 622-23 (11th Cir. 2007)). Thus, allegations of negligent behavior cannot support a deliberate indifference claim, and a plaintiff must allege a connection between any alleged injuries and the defendant's actions.

Furthermore, "[m]ere knowledge of a substantial risk of harm, however, is insufficient to show deliberate indifference." Hale, 50 F.3d at 1583 (11th Cir. 1995). Instead, Plaintiff must also allege that the ADOC Officials "knowingly or recklessly

---

[1] In Victor Russo v. Jefferson Dunn, et al., the District Court granted summary judgment in favor of the ADOC defendants (including Dunn), for the plaintiff's failure to "produce evidence to create a genuine dispute as to the existence of an excessive risk [of] inmate-on-inmate violence." Case No. 2:17-cv-01005-KOB-JEO, 2020 WL 1285914, at *1, *10 (N.D. Ala. March 17, 2020).

'disregard[ed] that risk by failing to take reasonable measures to abate it.'" Id. (quoting Farmer, 511 U.S. at 847); Cox v. Nobles, 15 F.4th 1350, 1360 (11th Cir. 2021) (affirming dismissal of failure-to-protect claims and observing that, "[h]aving satisfied the subjective component of deliberate indifference, [plaintiff] was also required to allege facts suggesting that [defendant] acted in an objectively unreasonable manner"). Thus, Plaintiff must allege that the ADOC Officials "knew of ways to reduce the harm but knowingly declined to act, or that [they] knew of ways to reduce the harm but recklessly declined to act." Hale, 50 F.3d at 1583. Plaintiff fails to do so.

This Court previously expressed concerns about Plaintiff's failure to allege specific actions each individual defendant could have taken within his or her authority to prevent the harm to Plaintiff. Instead of providing actual specific facts, Plaintiff provides only vague and conclusory allegations that the ADOC Officials "fail[ed] to take actions to correct these issues, including failing to adopt effective policies aimed at curbing violence and failing to ensure that prison officials followed the existing policies to curb violence." (See, e.g., doc. no. 91, ¶¶ 247, 245, 263, and 269). Plaintiff alleges no specific actions within the authority of each ADOC Official to make the classification system "effective" or to "curb violence." Id. Plaintiff's deficient allegations (yet again) fail to take his claim from possible to plausible.

Plaintiff complains that Dunn, Watson, and Ellington "failed to ensure that [certain] policy changes" agreed to in a previous settlement "were effectuated." (Id., ¶¶ 248, 258, 270). Even assuming the truth of Plaintiff's allegations that the ADOC Officials did not effectuate the settlement agreement's provisions in an official-capacity action, a mere allegation that an individual defendant failed to implement policy reforms from a settlement cannot alone support personal liability. The plaintiff must plausibly allege that the official possessed the authority and obligation to implement those changes. That is, the official must possess an individual duty (not an official-capacity, contractual obligation) and resources to implement these changes.

The Eleventh Circuit specifically rejected a similar attempt to hold individual defendants liable for damages because they failed to implement official-capacity or systemic changes in policies and practices over forty (40) years ago. Williams v. Bennett, 689 F.2d 1370 (11th Cir. 1982). Like this action, Williams involved individual-capacity damages claims arising from an inmate-on-inmate assault. Id. at 1384. In a previous class action, "the district court entered injunctive relief…direct[ing] that only minimum custody inmates be assigned to dormitories and that at least one guard be stationed inside and one guard outside the dormitories." Id. at 1375. Despite the injunction, plaintiff's "dormitory housed medium security prisoners, and no prison guards were stationed either inside or outside the

13

dormitory." Id. at 1374. The plaintiff, therefore, sought to hold various prison officials liable in their individual capacities for failing to protect him from violence by failing to implement the terms of the injunction. Id. at 1380.

The Eleventh Circuit held that the plaintiff could not simply rest on "wrongdoing by the prison system, in its corporate form," but instead "must prove that one or more of the individual defendants acted with such callous indifference to [plaintiff's] safety as to amount to constitutional wrongdoing." Id. "Evidence that an individual defendant had neither the authority nor the resources to prevent the deprivation is material to this issue." Id. at 1375. Therefore, "to prove actionable conduct or callous indifference, [plaintiff] must demonstrate that a particular defendant had the capability (authority and means) to provide adequate security and did not do so." Id. at 1388-1389. (See also Pilcher v. Dunn, Case No: 4:21-cv-00204-ACA, Doc. 112) (holding that Plaintiff's failure to allege actions within the defendants' authority that they took or failed to take to prevent assault proved fatal to his complaint alleging a section 1983 claim against prison officials sued in their individual capacity). Plaintiff failed in the Second Amended Complaint to plausibly allege that the ADOC Officials possessed the "authority and means" to address the alleged issues regarding inmate violence. Accordingly, the Second Amended Complaint remains subject to dismissal.

14

## II.     THE DOCTRINE OF QUALIFIED IMMUNITY BARS PLAINTIFF'S SECTION 1983 CLAIM AGAINST THE ADOC OFFICIALS.

As set forth above, Plaintiff cannot state a plausible section 1983 claim against the ADOC Officials. Accordingly, "'there is no necessity for further inquiries concerning qualified immunity.'" Harrison, 746 F.3d at 1299, n. 15 (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). Even if Plaintiff plausibly alleged a constitutional violation by the ADOC Officials (he did not and cannot), Plaintiff fails to allege the type of conduct necessary to overcome qualified immunity and impose personal liability on these public servants based on the claims alleged in the Second Amended Complaint. "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Thus, while qualified immunity constitutes an affirmative defense, a defendant may raise it on a motion to dismiss where the facts establishing the defense are evident on the face of the complaint. Iqbal, 556 U.S. at 672 (holding that qualified immunity represents "a limited 'entitlement not to stand trial or face the other burdens of litigation,'" and it is therefore appropriate for courts to decide the issue at an early stage, including at on a motion to dismiss) (quoting Mitchell, 472 U.S. at 526). Plaintiff's Second Amended Complaint articulates facts confirming the ADOC Officials' entitlement to qualified immunity, and the Court should dismiss the claims against them.

15

"Qualified immunity offers complete protection for government officials sued in their individual capacities so long as their conduct violates no clearly established statutory or constitutional rights which a reasonable person would have known." Lee v. Ferraro, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (internal quotations and citations omitted). Qualified immunity allows government officials to perform their discretionary duties without the fear of personal liability or harassing litigation. See Anderson v. Creighton, 483 U.S. 635, 638 (1987); Lee, 284 F.3d at 1194 (internal citations omitted). "[Q]ualified immunity for government officials is the rule, [and] liability and trials for liability the exception." Alexander v. Univ. of N. Fla., 39 F.3d 290, 291 (11th Cir. 1994). Here, this rule unquestionably applies.

A public official must "first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee, 284 F.3d at 1194 (citing Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991) (internal citations omitted)). Once the official establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is inappropriate. Id.

Courts apply a two-part test in evaluating whether a plaintiff carries this burden. First, as a "threshold question," "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. Then, if a constitutional right would have been violated

16

under the plaintiff's version of the facts, the court must determine "whether the right was clearly established." Lee, 284 F.3d at 1194.[2]  Moreover, "qualified immunity for government officials is the *rule*, [and] liability and trials for liability the *exception*."  Alexander, 39 F.3d at 291 (emphasis added).  The ADOC Officials—as alleged in Plaintiff's Second Amended Complaint—acted at all times within their discretionary authority, and no case law clearly establishes that the ADOC Officials' alleged actions violated Plaintiff's constitutional rights.

Because the face of the Second Amended Complaint concedes that the ADOC Officials acted "under the color of the law" (Doc. No. 91 ¶23, 24, 25, 26), or within their roles as State employees, the burden shifts to Plaintiff to demonstrate that they violated a clearly established constitutional right.  Pearson v. Callahan, 555 U.S. 223, 232 (2009); Grider v. City of Auburn, 618 F.3d 1240, 1254 (11th Cir. 2010). Even if Plaintiff properly alleged a constitutional violation (he did not and cannot), he cannot plausibly allege a violation of clearly established law.  In considering whether alleged conduct violated clearly established law, courts "look for 'fair warning' to [public officials] that the conduct at issue violated a constitutional right." Gaines v. Wardynski, 871 F.3d 1203, 1208 (11th Cir. 2017) (quoting Jones v.

---

[2] In Pearson v. Callahan, the Supreme Court clarified that the order in which a court addresses each part of the qualified immunity analysis is not mandatory, but rather left to the sound discretion of the lower courts.  555 U.S. 223, 236-43 (2009).

17

Fransen, 857 F.3d 843, 851 (11th Cir. 2017)).  Generally, a plaintiff seeking to

demonstrate a violation of clearly established law must "point to prior case law (from

the Supreme Court of the United States, the Eleventh Circuit, or the highest court in

the relevant state) that is 'materially similar.'" Id. (quoting Jones, 857 F.3d at 851-

52).  The Supreme Court "ha[s] repeatedly told courts not to define clearly

established law at too high a level or generality." City of Tahlequah, Okla. v. Bond,

142 S. Ct. 9, 10 (2021) (per curiam).  Therefore, a determination as to whether the

law was clearly established "'must be undertaken in the light of the specific context

of the case, not as a broad general proposition.'" Riva-Villegas v. Cortesluna, 142

S. Ct. 4, 8 (2021) (per curiam) (quoting Brosseau v. Haugen, 543 U.S. 194, 198

(2004)).  This standard is fatal to Plaintiff's section 1983 claim against the ADOC

Officials.

As set forth above, the Second Amended Complaint fails to state any section

1983 claim against any individual ADOC Official for violating Plaintiff's

constitutional rights.  Plaintiff can point to no prior case law suggesting that any

individual ADOC Official should have been on notice that his individual conduct

violated Plaintiff's constitutional rights.  To the extent Plaintiff attempts to assert a

claim for supervisory liability against the ADOC Officials, the case law plainly

establishes that supervisory liability remains inappropriate in these circumstances.

Cottone v. Jenne, 326 F.3d 1352, 1362 (11th Cir. 2003) (reversing district court's

denial of motion to dismiss supervisory liability claims where supervisors did not participate in conduct leading to detainee's death); see also Wade v. U.S., 13 F.4th 1217, 1231 (11th Cir. 2021 (emphasizing the importance of "*who* is being sued and under what theory of law," and concluding, "there are no facts in the record suggesting this particular defendant is liable.") (Tjoflat, J., concurring). Furthermore, no clearly established law exists to put the ADOC Officials, as statewide supervisory officials and off-site personnel, on notice that their individual conduct violated Plaintiff's constitutional rights. Thus, the face of the Second Amended Complaint establishes that the doctrine of qualified immunity shields the ADOC Officials from liability.

## III. PLAINTIFF'S STATE LAW NEGLIGENCE CLAIM IS DUE TO BE DISMISSED.

In addition to Plaintiff's section 1983 claim, in Count IV of the Second Amended Complaint, Plaintiff purports to assert a state-law negligence claim. (Doc. No. 91, ¶¶ 331-340). After the Court's dismissal of the section 1983 claim, the Court may simply decline to exercise supplemental jurisdiction over the state-law negligence claim under 28 U.S.C. § 1367(c)(3). Woods v. Comm'r., Ala. Dept. of Corr., 951 F.3d 1288, 1295 (11th Cir. 2020) (citing Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088-89 (11th Cir. 2004)) (following dismissal of all federal claims, Eleventh Circuit encourages dismissal of remaining state-law claims). Thus, to the extent the Court dismisses the section 1983 claim, it need not reach the state-law

19

claim.  (See Doc. No. 54 at 22-23 (declining to exercise supplemental jurisdiction over the state-law claim in the original Complaint after dismissing federal claims). Nevertheless, if the Court does reach the state-law negligence claim, the Court should dismiss this claim as well.

Under Alabama law, the ADOC Officials, as state officials, receive immunity from all personal civil liability for claims arising from the official "formulating plans, policies, or designs" and/or "exercising his or her judgment in the administration of a department or agency of government, including, but not limited to . . . making administrative adjudications . . ., allocating resources," or "hiring, firing, transferring, assigning, or supervising personnel . . . ."  Ex parte Butts, 775 So. 2d 173, 177-78 (Ala. 2000); Giambrone v. Douglas, 874 So. 2d 1046, 1057 (Ala. 2003) ("The immunity afforded State agents who exercise their judgment . . . is not abrogated for negligent and wanton behavior.").  This well-recognized State-agent immunity applies here.

The Alabama Supreme Court established a burden-shifting process when a defendant raises the State-agent immunity defense.  Ex parte Estate of Reynolds, 946 So. 2d 450, 452 (Ala. 2006).  Under this framework, the "state-agent bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity."  Id. (citations omitted).  Once the official makes such a showing, "the burden then shifts to the plaintiff to show that the State agent

20

acted willfully, maliciously, fraudulently, in bad faith or beyond his or her authority." Id. Plaintiff cannot overcome State-agent immunity here.

Plaintiff's allegations establish that Alabama law entitles the ADOC Officials to State-agent immunity. Plaintiff expressly alleges that the ADOC Officials all acted within the scope of their employment. (Doc. No. 91, ¶¶ 38, 23- 26). Further, the Alabama Supreme Court recognized that ADOC employees function as State officials and receive State-agent immunity when fulfilling the duties of their employment. Carpenter v. Tillman, 948 So. 2d 536, 538 (Ala. 2006). Thus, the burden now shifts to Plaintiff to plausibly allege that the ADOC Officials each acted "willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." Reynolds, 946 So. 2d at 452. Plaintiff cannot meet this standard.

Due to the cursory nature of Plaintiff's allegations, he makes no factual allegations to support any exception to State-agent immunity. (See generally, Doc. No. 91, ¶¶ 331-340). Moreover, the Alabama Supreme Court held that conclusory allegations, like those herein, could not overcome State-agent immunity on a motion to dismiss. See Ex parte Gilland, 274 So. 3d 976, 985 n.3 (Ala. 2018) ("Although we are required to accept [plaintiff's] factual allegations as true at this stage of the proceedings, we are not required to accept her conclusory allegations that [defendant] acted willfully, maliciously, fraudulently, or in bad faith;" instead, plaintiff must "plead facts that would support those conclusory allegations"); see

21

also <u>Shook v. Dunn</u>, No. 2:18-cv-1048-MHT, 2020 WL 1492841, at *7 (M.D. Ala. Mar. 25, 2020) (citations omitted). Where the ADOC Officials simply performed their jobs, even if they made a mistake, "it is the protection of officials engaged in such discretionary activities that is the purpose of State-agent immunity." <u>Ex parte Hugine</u>, 256 So. 3d 30 (Ala. 2017); <u>see</u> <u>also</u> <u>Ex parte Moulton</u>, 116 So. 3d 1119, 1141 (Ala. 2013) (when claims against state officials are based on actions within the line and scope of the state officials' duties, the action is, in effect, an action against the State, and therefore barred by State immunity).  Because the ADOC Officials, as alleged by the Plaintiff, performed their administrative duties at all times under color of state law, they remain entitled to the protections of State-agent immunity as to the state law claims.  Accordingly, State-agent immunity protects the ADOC Officials, and Plaintiff's state-law negligence claim is due to be dismissed.

Even if State-agent immunity did not apply, Plaintiff fails to state a claim for negligence under Alabama law.  A plaintiff alleging negligence under Alabama law must plead "(1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury." <u>Lemley v. Wilson</u>, 178 So. 3d 834, 841 (Ala. 2015) (quoting <u>Martin v. Arnold</u>, 643 So.2d 564, 567 (Ala. 1994) (internal citations omitted)).  Plaintiff alleges in conclusory fashion that "Defendants owed [Plaintiff] a duty of reasonable care" and that they "acted with gross negligence, willfully, maliciously, fraudulently, or in bad faith."  (Doc. No. 91, ¶¶ 332-333).

22

However, Plaintiff fails to plead facts demonstrating the existence of an individual duty on behalf of any ADOC Official or that any ADOC Official breached said duty. For these reasons, Plaintiff fails to plead a viable negligence claim against the ADOC Officials under Alabama law.

## CONCLUSION

The ADOC Officials respectfully request that the Court dismiss the Second Amended Complaint because Plaintiff failed to state a claim against the ADOC Officials.

Dated: August 21, 2023.

/s/ Matthew B. Reeves
One of the Attorneys for the ADOC Officials


Daniel J. Chism
William R. Lunsford
Matthew B. Reeves
**BUTLER SNOW LLP**
200 West Side Square
Suite 100
Huntsville, Alabama 35801
Telephone: (256) 936-5650
Facsimile: (256) 936-5651
daniel.chism@butlersnow.com
bill.lunsford@butlersnow.com
matt.reeves@butlersnow.com

23

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all parties in this matter, including without limitation the following, by the Court's CM/ECF system or by U.S. Mail on this the 21st day of August, 2023:

Alyse N. Windsor
Gaile P. Gratton
J.S. "Chris" Christie, Jr.
**DENTONS SIROTE, P.C.**
2311 Highland Avenue South
Birmingham, AL 35205
Telephone: (205) 930-5427
Facsimile: (205) 930-510
alyse.windsor@dentons.com
gaile.gratton@dentons.com
chris.christie@dentons.com

Brandon R. Keel
Charles Spalding, Jr.
Julia C. Barrett
**KING & SPALDING, LLP**
1180 Peachtree Street, N.E. Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
bkeel@kslaw.com
cspalding@kslaw.com
jbarrett@kslaw.com

*Attorneys for Plaintiff*

Robert F. Northcutt
Richard Hill, Jr.
James N. Walter, Jr.
W. Jackson Britton
William A. Sheehan
Caitlin E. Cobb
**CAPELL & HOWARD, P.C.**
150 S. Perry Street
P.O. Box 2069
Montgomery, AL 36102
Telephone: (334) 241-8000
bob.northcutt@chlaw.com
rick.hill@chlaw.com
jimmy.walter@chlaw.com
jackson.britton@chlaw.com
allen.sheehan@chlaw.com
caitlin.cobb@chlaw.com

*Attorneys for Karla Jones, Errol Pickens, Nekitris Estelle, Gary Malone, Kevin White, Carla Graham, Larry Baker, Antoine Price, and Derrick Dent*

*/s/ Matthew B. Reeves*
*Of Counsel*

24