FILED

2023 Sep-05  PM 04:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | |
|---|---|
| JOHN MCCARLEY, <br><br> Plaintiff, <br><br> v. <br><br> JEFFERSON DUNN, *et al*., <br><br> Defendants. | Case No. 4:21-cv-00570-LSC <br><br> JURY TRIAL DEMANDED |

**PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS'
MOTIONS TO DISMISS THE SECOND AMENDED COMPLAINT**

J.S. "Chris" Christie, Jr.
(ASB-3162-H07J)
Gaile P. Gratton
(ASB-9988-r63g)
Alyse N. Windsor
(ASB-8902-V72C)
**DENTONS SIROTE, P.C.**
2311 Highland Avenue South
Post Office Box 55727
Birmingham, AL 35255-5727
chris.christie@dentons.com
gaile.grattongreene@dentons.com
alyse.windsor@dentons.com

Brandon R. Keel (*pro hac vice*)
Charlie Spalding, Jr. (*pro hac vice*)
**KING & SPALDING LLP**
1180 Peachtree Street, NE
Atlanta, GA 30309
T: (404) 572-4600
F: (404) 572-5100
bkeel@kslaw.com
cspalding@kslaw.com

Julia C. Barrett (*pro hac vice*)
**KING & SPALDING LLP**
500 W. 2nd Street, Suite 1800
Austin, TX 78701
T: (512) 457-2000
F: (512) 457-2100
jbarrett@kslaw.com

*Counsel for Plaintiff John McCarley*

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

STATEMENT OF FACTS ...................................................................................2

ARGUMENT .......................................................................................................7

    I.    Defendants' Arguments For Dismissal Have Been Rejected By Several Courts, And The Court Should Do The Same Here......................8

    II.    Mr. McCarley Has Stated an Eighth Amendment Claim Against Defendants Baker and Dent in Count I. ......................................................10

          A.    Mr. McCarley Faced an Objectively Substantial Risk of Serious Harm In the Hot Bay at St. Clair....................................10

          B.    Defendants Baker and Dent Were Subjectively Aware of the Substantial Risk of Serious Harm Mr. McCarley Faced. .............11

          C.    Defendants Baker and Dent Disregarded This Substantial Risk of Serious Harm by Conduct that is More than Gross Negligence...................................................................................14

    III.    Mr. McCarley Has Stated an Eighth Amendment Claim Against the Supervisor Defendants.......................................................................14

    IV.    Defendants Are Not Entitled to Qualified Immunity. ...........................22

          A.    Materially Similar Cases Gave Defendants Fair Warning of the Unlawfulness of their Conduct...............................................22

          B.    Broader Principles Underlying the Eighth Amendment Defeat Qualified Immunity. ............................................................28

          C.    Defendants' Conduct So Obviously Violates the Constitution that Prior Case Law is Unnecessary.........................29

    V.    Mr. McCarley Has Stated Claims Under Alabama Law..........................30

CONCLUSION...................................................................................................31

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alston v. Swarbrick*,
  954 F.3d 1312 (11th Cir. 2020) ...................................................................................15

*Barefield v. Dunn*,
  No. 2:20-CV-917-WKW, 2023 WL 5417550 (M.D. Ala. Aug. 22, 2023).....................2, 9, 16

*Brooks v. Warden*,
  800 F.3d 1295 (11th Cir. 2015) ...................................................................................30

*Caldwell v. Warden, FCI Talladega*,
  748 F.3d 1090 (11th Cir. 2014) ...............................................................................23, 28

*Carter v. Galloway*,
  352 F.3d 1346 (11th Cir. 2003) ...................................................................................29

*Cottone v. Jenne*,
  326 F.3d 1352 (11th Cir. 2003) ...................................................................................27

*Ex parte Cranman v. Maxwell*,
  792 So. 2d 392 (Ala. 2000)..........................................................................................30

*D.S. v. Dunn*,
  No.: 2:20-CV-2012-RDP, 2022 WL 3570330 (N.D. Ala. Aug. 18, 2022)..........................2, 8

*Farmer v. Brennan*,
  511 U.S. 825 (1994)................................................................................................22, 29

*Gonzalez v. Reno*,
  325 F.3d 1228 (11th Cir. 2003) ...................................................................................22

*Hale v. Tallapoosa Cnty.*,
  50 F.3d 1579 (11th Cir. 1995) ...............................................................11, 15, 16, 23, 24, 27

*Harrison v. Culver*,
  746 F.3d 1288 (11th Cir. 2014) ...............................................................................13, 27

*Huffman v. Dunn et al.*,
  No. 20-CV-01293-CLM, 2021 WL 2533024 (N.D. Ala. June 21, 2021)..........................13, 30

*Ingram v. Kubik*,
  30 F.4th 1241 (11th Cir. 2022) ....................................................................................25

*Lane v. Philbin,*
 835 F.3d 1302 (11th Cir. 2016) ...................................................................................13, 16

*Marbury v. Warden,*
 936 F.3d 1227 (11th Cir. 2019) ...................................................................................7, 25, 26

*Moore v. Dunn,*
 No. 4:21-cv-00555-AMM, Dkt. 64 (N.D. Ala. Sept. 30, 2022) .....................................2, 9, 13

*Patel v. Lanier Cnty.,*
 969 F.3d 1173 (11th Cir. 2020) .....................................................................................28, 29

*Rodriguez v. Sec'y for Dep't of Corrs.,*
 508 F.3d 611 (11th Cir. 2007) ...........................................................................11, 12, 27, 28, 29

*Scott v. Miami Dade Cnty.,*
 657 F. App'x 877 (11th Cir. 2016) .................................................................................22, 27, 29

*Taylor v. Riojas,*
 141 S. Ct. 52 (2020)........................................................................................................30

*Wilson v. Dunn,*
 618 F. Supp. 3d 1253 (N.D. Ala. 2022)..........................................................2, 8, 9, 13, 18, 29

**Other Authorities**

Federal Rule of Civil Procedure 8(a) ...............................................................................1

## INTRODUCTION

The Second Amended Complaint ("SAC") details the factual allegations supporting Plaintiff John McCarley's claims against each Defendant—going well beyond the "short and plain statement" required by Rule 8(a). In May 2019, Mr. McCarley was nearly killed when he was stabbed by another inmate while in the custody of the Alabama Department of Corrections ("ADOC") at St. Clair Correctional Facility ("St. Clair"). This attack—which was one of *five* stabbings committed by the same inmate on the same day—was the result of systemic unconstitutional conditions persisting for years at St. Clair. *See* SAC ¶¶ 86–95. Those deficiencies led to numerous similar prisoner-on-prisoner attacks before this incident and made St. Clair a place where extreme violence had, unfortunately, become the norm. *See id.* ¶¶ 95–180. These deficiencies were so extreme they prompted an investigation by the Department of Justice ("DOJ"), which found:

> that there is reasonable cause to believe . . . that the conditions in Alabama's prisons for men . . . violate the Eighth Amendment . . . and [that] these violations are pursuant to *a pattern or practice of resistance to the full enjoyment of rights protected by the Eighth Amendment*.

Dkt. 56 at 83 (emphasis added).

The SAC alleges that each Defendant was aware of the systemic unconstitutional conditions that existed at St. Clair before Mr. McCarley's attack and that it was these very same conditions that led to Mr. McCarley nearly being

1

killed in custody. *See* SAC ¶¶ 12, 13, 110, 123, 124. The SAC also alleges, in detail, how each Defendant had the authority and opportunity to take action to address these deficiencies and to prevent Mr. McCarley's attack, but each failed to do so. *See id.* ¶¶ 207–327. Accepting Plaintiff's allegations as true, which the Court must, the SAC states a claim against each Defendant for which qualified immunity does not apply.

Indeed, multiple courts in this District have recently rejected the very same arguments Defendants assert here, in substantially similar cases (including one arising from the same attack). *See D.S. v. Dunn*, No.: 2:20-CV-2012-RDP, 2022 WL 3570330 (N.D. Ala. Aug. 18, 2022); *Moore v. Dunn*, No. 4:21-cv-00555-AMM, Dkt. 64 (N.D. Ala. Sept. 30, 2022); *Wilson v. Dunn*, 618 F. Supp. 3d 1253 (N.D. Ala. 2022); *see also Barefield v. Dunn*, No. 2:20-CV-917-WKW, 2023 WL 5417550 (M.D. Ala. Aug. 22, 2023). There is no relevant distinction from the allegations at issue here, and the Court should deny Defendants' motions accordingly.

## STATEMENT OF FACTS

When Mr. McCarley entered ADOC custody, he was designated a minimum-custody inmate, meaning that he did "not pose a significant risk to [him]self or others." SAC ¶ 43. That low-risk classification meant that Mr. McCarley was not supposed to be housed in a "close custody" facility like St. Clair, which is the "most restrictive custody level to which an inmate can be assigned." *Id.* ¶¶ 9, 44. But Mr. McCarley was sent to St. Clair in May 2019 to attend a substance abuse treatment

program, where the program participants were supposed to be housed separate from the dangerous general population inmates. *Id*. ¶ 46. Those policies, however, were readily ignored, as prison officials were **not** appropriately segregating general population inmates from the program participants. *Id*. ¶ 49. After an officer informed Mr. McCarley that if he dropped from the program, ADOC policies required him to be transferred from St. Clair and held in segregated housing pending his transfer due to his minimum custody status, Mr. McCarley dropped from the program. *Id*. ¶ 50.

In violation of ADOC and St. Clair policies, however, Mr. McCarley was not placed in protective housing or transferred upon dropping the program. Instead, he was wrongly moved to general population in cell N-2 in block N-1. *Id*. ¶ 52. At that time, N-block was part of the notorious "hot bay" at St. Clair, a housing unit where St. Clair intentionally concentrated inmates with disciplinary problems who were known to be prone to violence. *Id*. ¶¶ 53–54. And, despite this practice, St. Clair did not staff the hot bay with additional officers, implement any additional safety procedures, or even ensure that existing protocols were followed. *Id*. ¶¶ 53–58.

After arriving in the hot bay, Mr. McCarley was threatened by an inmate in his assigned cell. He reported this threat to Defendants Derrick Dent and Larry Baker, explained that he feared for his life in general population, that he was supposed to be transferred out of St. Clair, and that he should be placed in protective housing pending his transfer. *Id*. ¶¶ 59–60. Defendants Dent and Baker did not

3

document or appropriately respond to these pleas, as they were required to do. *Id.* ¶¶ 61–62. Instead, Defendant Dent taunted Mr. McCarley, promising to "throw [him] to the wolves" and leave him "in the toughest area in the camp." *Id.* ¶ 62. When Mr. McCarley persisted that the officers were required to look after his safety, Defendant Dent jumped up from his chair, took out his night stick, and ran Mr. McCarley out of the office. *Id.* ¶ 63. Defendants Dent and Baker had the authority and responsibility to not only ensure that Mr. McCarley's requests were addressed, but also to move him out of the hot bay. *Id.* ¶¶ 218-218, 227-228. But they refused to do so. *Id.*

During the following days, Mr. McCarley received more threats to his life, was forced to sleep in the common dayroom in N-block, and was offered for sale to other inmates for sex. *Id.* ¶¶ 64–66. He repeatedly returned to Defendants Baker's and Dent's desk to plead for help, request a transfer, and relay these threats. *Id.* ¶ 67. He reiterated that he was in fear for his life, that he was not supposed to be in general population given his custody status, and that he wanted to speak with a supervisor and moved out of the hot bay. *Id.* ¶¶ 67–69. Defendants ignored him again. *Id.* ¶ 70.

One week after arriving in the hot bay, Mr. McCarley's fears came true. He returned to the hot bay to find the cell block doors open, allowing access to inmates from other blocks. *Id.* ¶ 74. As Mr. McCarley walked through the block, he was attacked and stabbed in the chest by another inmate, Dion Williams, who appeared

4

intoxicated. *Id.* ¶¶ 76–77. Mr. Williams was not even assigned to N-block . *Id.* ¶ 87. And in less than 24 hours, Mr. Williams stabbed five people—two in his own block (after which he was questioned without being searched), before he then entered N-block and stabbed Mr. McCarley and another inmate, and then—after a lockdown—stabbed yet *another* prisoner in yet *another* cell block. *Id.* ¶¶ 86–95.

The nearly fatal assault of Mr. McCarley was unsurprising given the long history of violence and systemic unconditional conditions at St. Clair. *Id.* ¶¶ 96–205. By the time of this attack, the homicide rate at St. Clair was forty-five times higher than the national rate. *Id.* ¶ 3. The systemic deficiencies that led to this high rate of violence—and Mr. McCarley's attack—included, among other things, a known failure to properly house and segregate inmates according to their classifications, understaffing, overcrowding, failure to adhere to security policies, widespread contraband weapons, inadequate search protocols, inadequate supervision of inmate movement, failure to document and address complaints and requests for housing reassignment, failure to refer incidents for prosecution, failure to ensure appropriate security protocols in the dangerous hot bay, and failure to adopt sufficient training or staffing protocols in light of the understaffing. *Id.* ¶¶ 96–180.

Each Defendant was aware of these systemic conditions before Mr. McCarley's attack. *Id.* §§ E, F. In fact, these same unconstitutional conditions were detailed in the DOJ's April 2019 report ("DOJ Report") from its investigation into

5

Alabama state prisons, including St. Clair. *See id.* ¶¶ 100–111. The DOJ concluded that there was "reasonable cause to believe" that these conditions violated the Eighth Amendment and were "pursuant to a pattern or practice" of violations. Dkt. 56 at 83.

But, to be sure, Defendants were aware of these unconstitutional conditions long before the DOJ Report. *See* SAC ¶¶ 122–130. Defendants already knew of these conditions from various sources, including personal observations, a prior letter from the Equal Justice Initiative ("EJI"), prior similar incidents at St. Clair, ADOC Investigations & Intelligence Division reports, officer reports, disciplinary records, medical records, regular ADOC data reports, prisoner progress reports, prisoner litigation, and more. *See id.* ¶ 182. And each of the systemic deficiencies of which Defendants were aware—from numerous sources—contributed to the tragic attack on Mr. McCarley. *See id.* ¶¶ 118–130, 131–138, 139–153, 154–165, 166–205.

Defendants were not only aware of the substantial risk of serious harm posed to Mr. McCarley at St. Clair, they also had the authority and opportunity to act to address these issues and prevent the attack. *See id.* ¶¶ 217-218; 238; 249-250; 257-258; 264; 271-272; 278-279; 286-287; 295-296; 302-303; 310-311; 318-319; 326-327. The Defendants fall into two categories. **First** are the two officers—Defendants Baker (a Lieutenant) and Dent (a Sergeant)—who deliberately ignored Mr. McCarley's requests for help and "threw [him] to the wolves." *Id.* ¶¶ 14, 62, 72, 226. These Defendants were responsible for the safety of inmates at the prison and the

supervision of security activities and subordinate employees. *Id.* ¶¶ 35–36. They knew of the substantial risk of violence at St. Clair. *Id.* ¶¶ 207–218, 219–229. They also knew of the substantial risk to Mr. McCarley specifically, as a minimum custody inmate improperly placed in the hot bay. *Id.* ¶¶ 206–218; *id.* ¶¶ 220–229. These Defendants were deliberately indifferent to the substantial risk of harm posed to Mr. McCarley by ignoring his pleas for help. *Id.* ¶¶ 216–218, 226–228.

**Second**, the Supervisor Defendants (as defined below) were the ADOC officials and St. Clair supervisory officials with power and responsibility to ensure the safety of the prisoners in their custody. *Id.* ¶¶ 23–34. The Supervisor Defendants knew of substantial risk of serious harm at St. Clair due to the systemic unconstitutional conditions, including the dangerous conditions created by use of the hot bay. Yet, they did nothing to remedy the situation, despite having the authority, obligation, and opportunity to do so. *Id.* ¶¶ 243-330.

## ARGUMENT

Despite the well-established pleading standard, Defendants implore the Court (without citing any authority) to employ a far more exacting standard and, once again, rely primarily on summary judgment cases. *See, e.g.*, *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019); Dkt. 94 at 10 (arguing the SAC must allege the dates Defendants received internal reports). But when applying the appropriate

standard, accepting Plaintiff's factual allegations as true, the SAC clear states a claim for relief against each Defendant.

**I.   Defendants' Arguments For Dismissal Have Been Rejected By Several Courts, And The Court Should Do The Same Here.**

Multiple courts in this District and elsewhere have recently denied similar motions in substantially similar cases. There is no reason for a different result here. In *D.S. v. Dunn*, Judge Proctor denied motions to dismiss in another § 1983 action arising from a prisoner-on-prisoner attack at St. Clair, finding that allegations nearly identical to those asserted here (including against many of the same Defendants) were sufficient to state a claim. *D.S.*, 2022 WL 1785262, at *2–5. Like Mr. McCarley, the *D.S.* plaintiff alleged that the defendants violated his rights by failing to take action to remedy the conditions at St. Clair. *Id.* at *4. Just like the allegations here, those systemic conditions included the history of widespread violence at St. Clair, excessive contraband, inadequate search protocols, failure to appropriately house and segregate inmates, failure to adhere to classification policies, improperly concentrating dangerous inmates in the hot bay without adding any security measures, and failing to supervise inmates to prevent unauthorized movement. *Compare D.S.*, 2022 WL 1785262, at *2–5 *with* SAC ¶¶ 46–72, 96–180, 181–205.

Judge Bowdre similarly denied motions to dismiss a complaint arising out of another attack at St. Clair. *See Wilson*, 618 F. Supp. 3d 1253. Mr. Wilson was attacked inside his cell by a prisoner from a different cell block. *Id.* at 1264. The

plaintiff alleged that the unrestricted movement of prisoners, failure to confiscate contraband weapons or discipline prisoners with contraband weapons, concentration of prisoners in the hot bay, and understaffing and undertraining led to his attack. *Id.* at 1265-68. He also alleged that a history of violence, prior lawsuits, and investigations put defendants on notice of the unconstitutional conditions. *Id.*

In *Moore v. Dunn*, Judge Manasco found that the plaintiff stated claims for violation of federal and state law for which many of the defendants were not entitled to qualified immunity. *Moore*, No. 4:21-cv-00555-AMM, Dkt. 64. That case involved another victim of the **same** series of stabbings at St. Clair at issue here. *Id.* And, just days ago, in *Barefield*, the court largely denied a motion to dismiss by several of the same defendants arising out of similar allegations concerning another ADOC facility. *Barefield*, 2023 WL 5417550. The court, rejecting many of the same arguments raised here, found that the plaintiff stated a claim based on allegations of "[r]ampant inmate-on-inmate violence," overcrowding, understaffing, widespread contraband, lack of inmate supervision, unrestricted inmate movement, failure to enforce segregation policies, and inadequate staff training. *Id.* at *20–25. Like Mr. McCarley's allegations, the plaintiff's allegations "paint a dark picture of a lawless state . . . where armed, unsupervised, and violent inmates can go wherever they want, whenever they want, and do whatever they want." *Id.* at *19.

9

There is no relevant distinction between the claims that survived dismissal in those cases and the ones here. The Court could therefore end its analysis there. But even if the Court went beyond these recent cases, it is clear the SAC states a claim.

## II.    Mr. McCarley Has Stated an Eighth Amendment Claim Against Defendants Baker and Dent in Count I.

The Eleventh Circuit has long held that "prison officials must take reasonable measures to guarantee the safety of the inmates, and a prison official violates the Eighth Amendment[] . . . if the official is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers [an] injury." *Dickinson*, 833 F. App'x at 271. To state a claim, Mr. McCarley "must first allege an objectively substantial risk of serious harm to prisoners." *Id*. at 271 (cleaned up). Next, he must allege that Defendants were deliberately indifferent to that risk, "which requires . . . (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; [and] (3) by conduct that is more than gross negligence." *Id*. (cleaned up). Each is met here.

### A.    Mr. McCarley Faced an Objectively Substantial Risk of Serious Harm In the Hot Bay at St. Clair.

The SAC sufficiently alleges that Mr. McCarley was at a substantial risk of serious harm in the dangerous hot bay at St. Clair, and that these Defendants were aware of such risk. Indeed, ADOC's policies alone recognize such a risk. Mr. McCarley, a minimum-out prisoner, should never have been placed in general

10

population at St. Clair—let alone in the hot bay. SAC ¶ 57. Mr. McCarley was threatened with violence on multiple occasions during his one-week stint, was forced to sleep in the dayroom, and begged for a transfer. *Id.* ¶¶ 63-69. The increased level of violence in the hot bay, the widespread misclassification and lack of segregation, the proliferation of contraband weapons, the failure to adequately monitor inmates, and the chronic understaffing and overcrowding further contributed to this substantial risk of harm to Mr. McCarley. *Id.* ¶¶ 207–29.

The Eleventh Circuit has made clear that such allegations are sufficient to satisfy this element. *See, e.g.*, *Rodriguez v. Sec'y for Dep't of Corrs.*, 508 F.3d 611, 620 (11th Cir. 2007) (allegations of knowledge were sufficient where plaintiff told defendants about threats to his life); *see also Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1583 (11th Cir. 1995) (similar); *Dickinson*, 833 F. App'x at 271-72 (similar).

### B. Defendants Baker and Dent Were Subjectively Aware of the Substantial Risk of Serious Harm Mr. McCarley Faced.

The SAC also sufficiently alleges that Defendants Baker and Dent were subjectively aware of the substantial risk of serious harm to Mr. McCarley.

***First***, as discussed above, Defendants Baker and Dent knew that Mr. McCarley did not belong in general population (let alone in the hot bay). SAC ¶¶ 58, 60–72. When Mr. McCarley was placed in the hot bay in contravention of ADOC policy, *id.* ¶¶ 57–58, he promptly reported to Defendants Baker and Dent that he was not supposed to be there given his minimum custody status and that he was supposed

11

to be transferred and placed in protective housing pending the transfer. *Id.* ¶¶ 62–70, 72. They also knew that he was being forced to sleep in the common dayroom, which further increased the substantial risk of serious harm. *Id.* ¶¶ 64-67.

**Second**, Mr. McCarley specifically told Defendants Baker and Dent that he was being threatened and that he feared for his life. *Id*. ¶¶ 14, 67. After reporting the initial threats (and being ignored), Mr. McCarley returned to the officers' desk on multiple occasions to relay additional threats on his life and to request protection and a transfer. *Id*. ¶ 67. This direct conveyance of threats establishes that these Defendants were subjectively aware of the substantial risk of serious harm he faced. *See Rodriguez*, 508 F.3d at 621 (finding inmate's conveyance of specific threats to defendants sufficient to establish subjective knowledge); *Dickinson*, 833 F. App'x at 273 (generalized letters about prison conditions sufficient to show knowledge).

Although Defendants Baker and Dent argue that the SAC fails to allege they were aware that his attacker *specifically* had threatened him, Dkt. 96 at 13–14, no such allegation is required. "[A] prison official cannot avoid liability under the Eighth Amendment by showing that . . . he did not know the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Rodriguez*, 508 F.3d at 617; *accord Bowen*, 826 F.3d at 1321.

**Third**, these Defendants were aware of the conditions and history of violence at St. Clair—given personal observations from working there, the DOJ Report, the

12

EJI letter, press coverage, Investigations & Intelligence reports, officer reports, disciplinary records, medical records, regular ADOC data reports, prisoner progress reports, prisoner litigation, and the systemic failures present at the facility—and that these conditions presented a particular risk to a minimum custody offender like Mr. McCarley. SAC ¶¶ 182, 209–214, 220–224. These allegations show that Defendants Baker and Dent were aware of the substantial risk of serious harm that Mr. McCarley faced in the hot bay. *See Huffman v. Dunn et al.*, No. 20-CV-01293-CLM, 2021 WL 2533024 (N.D. Ala. June 21, 2021) (assuming at pleading stage that defendants were aware of prior instances of violence); *Harrison v. Culver*, 746 F.3d 1288, 1299 (11th Cir. 2014) (allegations of "an excessive risk of inmate-on-inmate violence at a jail" sufficient for knowledge); *Dickinson*, 833 F. App'x at 275 (similar).[1]

The Eleventh Circuit has also made clear that knowledge of a substantial risk of harm can be *inferred* from the totality of the circumstances. *See, e.g.*, *Lane v. Philbin*, 835 F.3d 1302, 1305, 1307 (11th Cir. 2016); *see also Wilson*, 618 F. Supp. 3d at 1273-74 (St. Clair officials possessed "subjective knowledge" based on "internal incident reports, ADOC investigations, and officer duty reports"); *Moore*, Dkt. 64, at 59-60 (similar as to St. Clair). The SAC at minimum alleges sufficient

---

[1] Contrary to Defendants' suggestion, the SAC need not specify the exact dates they received reports of these dangerous conditions. *See Moore*, No. 4:21-cv-00555-AMM, Dkt. 64, at 59-60 (a plaintiff "is not required to allege that [certain defendants] read external documents in order to plead that they knew about a substantial risk of serious harm to inmates at St. Clair").

facts to infer that Defendants Baker and Dent knew of the substantial risk of serious harm Mr. McCarley faced in the hot bay from their knowledge of the widespread history of violence at St. Clair and the specific unconstitutional conditions that led to Mr. McCarley's attack.

C.     **Defendants Baker and Dent Disregarded This Substantial Risk of Serious Harm by Conduct that is More than Gross Negligence.**

Tellingly, these Defendants do not even dispute the final element—that they disregarded the substantial risk of serious harm Mr. McCarley faced. Defendants Baker and Dent failed to respond to any of Mr. McCarley's numerous reports of threats and pleas for help. SAC ¶¶ 207–29. They did not appropriately document or address these threats and requests, as they were required to do; instead, they taunted and ignored him. *Id.* ¶¶ 62–64, 67–70, 72, 226. Mr. McCarley has stated a claim against Defendants Baker and Dent. *See Marsh*, 268 F.3d at 1029.

III.   **Mr. McCarley Has Stated an Eighth Amendment Claim Against the Supervisor Defendants.**

Contrary to the contentions in their motions, the SAC also sufficiently alleges a claim for violation of the Eighth Amendment against the Supervisor Defendants.

*First*, the ADOC Officials[2] argue that Mr. McCarley has stated no claim because he does not allege that they were personally involved in Mr. McCarley's

---

[2] While the SAC refers to all Defendants but Defendants Baker, Dent, and Guthery as the "Supervisor Defendants," the motions to dismiss make arguments on behalf of "ADOC Officials" and "Facility Supervisors." When arguments are made by both these groups, Mr. McCarley refers

14

incident. Dkt. 94 at 6–7. But to establish supervisor liability, the SAC must merely allege that the supervisors were "deliberately indifferent to a lawful policy being repeatedly violated or a failure to train resulting in a deprivation of people's rights." *Alston v. Swarbrick*, 954 F.3d 1312, 1321 (11th Cir. 2020). Such a claim can be established:

> 1) when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so; 2) when a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Dickinson*, 833 F. App'x at 272.

Moreover, as the Eleventh Circuit has made clear, supervisory liability is established where supervisors fail to address known policy failures and violent conditions. *See Dickinson*, 833 F. App'x at 271–73 (allegations of misclassification, widespread contraband, failure to supervise, and ongoing inmate violence stated claim against supervisors); *Hale*, 50 F.3d at 1583–84 (upholding claims against Sheriff where jail was overcrowded and inmates inadequately supervised and misclassified); *Marsh*, 268 F.3d at 1034 (similar). That is what the SAC does here, alleging that the Supervisor Defendants were aware of both the widespread history

---

to "Supervisor Defendants." However, where arguments are only made by one of these groups, Mr. McCarley refers to "ADOC Officials" or "Facility Supervisors" where necessary.

15

of violence at St. Clair *and* numerous policy violations and deficiencies that plagued the prison for years and which led to Mr. McCarley's attack. *See* SAC ¶¶ 96–205.

**Second**, the Supervisor Defendants argue that the SAC fails to allege that the violence at St. Clair amounted to widespread abuse putting them on notice of the need to correct the alleged deprivation. Dkt. 94 at 9–11; Dkt. 96 at 5–8. No fair reading of the SAC supports that argument. Instead, the SAC alleges sufficient facts to show that the Supervisor Defendants were subjectively and objectively aware of repeated policy violations, deficiencies at the prison, and a history of violence that was causally related to Mr. McCarley's injuries. Among other facts, the SAC alleges St. Clair's homicide rate was 45 times the national average (*id.* ¶ 3); there was a violent assault every 8.8 days (*id.* ¶ 102); at least 280 prisoners suffered injuries from assaults requiring hospitalization in the year preceding Mr. McCarley's attack (*id.* ¶ 97); St. Clair incurred a drastic rise in violence (*id.*); inmates frequently roamed unchecked (*id.* ¶¶ 113, 187); contraband weapons proliferated (*id.* ¶¶ 166–80); and numerous prisoners had been stabbed by prisoners improperly permitted to roam freely (*id.* ¶¶ 157–165). These allegations establish the Supervisor Defendants' subjective and objective knowledge of this risk of substantial harm. *See, e.g.*, *Lane*, 835 F.3d at 1305, 1307 (upholding supervisory liability); *Barefield*, 2023 WL 5417550 at *26 ("pervasive violence," understaffing, overcrowding, unsupervised inmates, and uncontrolled weapons "create the inference that" supervisors were

16

subjectively aware of excessive risk of violence); *LaMarca*, 995 F.2d at 1536–38 (similar); *Marsh*, 268 F.3d at 1029 (similar).

*Third*, the Supervisor Defendants argue that the SAC fails to allege what each Supervisor Defendant knew regarding failure to adhere to policies at St. Clair, and that it fails to allege that the Supervisor Defendants knew how to (or had the authority to) act to enforce these policies and address such systemic failures. Dkt. 94 at 11–14; Dkt. 96 at 9–11. But that ignores the SAC's actual allegations, which detail how the Supervisor Defendants were aware of these widespread policy failures and the substantial risk of harm they created. It alleges, for example, that each Supervisor Defendant was aware of the DOJ Report, which detailed the same systemic deficiencies that led to Mr. McCarley's attack. SAC ¶¶ 245, 254, 262, 268, 276, 283, 291, 300, 307, 315, 323. It also alleges that they were aware of these deficiencies before the DOJ Report from (i) reviewing incident reports, I&I reports, monthly ADOC data reports, and other reports detailing the rampant violence; (ii) scores of prior prisoner litigation, including the *Duke* class action; and (iii) the EJI letter notifying officials of these conditions and an EJI monitoring report describing EJI's findings. SAC ¶¶ 181–205. The SAC also alleges that two internal plans, the "Daniels Plan" and the "Estes Plan," were issued to specifically address the "troublesome" violence at St. Clair, especially in the hot bay, showing that the Supervisor Defendants were aware of these policy failures. *Id.* ¶¶ 114–117. But, as

17

discussed below, prison officials failed to implement these plans or ensure that policies were being followed to address the systemic deficiencies. *Id.* ¶¶ 114–17.

Moreover, the SAC alleges that under SOP 119, the Supervisor Defendants were required—on an annual basis—to conduct an internal and external audit to help ensure the prison was being appropriately operated to protect inmates from violence. *See id.* ¶ 200. Despite that requirement, no such audit was conducted at St. Clair since at least 2014, nearly five years before Mr. McCarley's attack, and the Supervisor Defendants were aware that this requirement was being ignored. *Id.* ¶¶ 201, 244, 252, 260, 266, 274, 281, 289, 305, 313, 321. No doubt aware that the audits would further reveal the unconstitutional conditions at St. Clair, the Supervisor Defendants refused to have them conducted in violation of their own SOP 119.

In the face of these well-pled factual allegations, the Supervisor Defendants resort to creating a new pleading standard, arguing a plaintiff must allege "specific actions each individual defendant could have taken within his or her authority to prevent the harm to Plaintiff." Dkt. 94 at 12. They cite no authority for that argument, which is contrary to the law. *See, e.g., Wilson*, 618 F. Supp. 3d at 1276 (causal connection can be established by failure to correct deprivation). But even if the Court were to adopt this unsupported pleading standard, the SAC alleges each Supervisor Defendant had the authority to take steps to address these systemic failures that would have prevented Mr. McCarley's attack but failed to do so. For example:

- Defendant Dunn, as ADOC Commissioner, had the ultimate authority for ensuring safety at St. Clair, including to order compliance with policies for supervision of inmate movement; order searches to be conducted with the regularity required by SOP 110; order that steps be taken to reduce the impact of understaffing; order that required security audits be performed; order heightened security protocols in the hot bay (including taking action to enforce the Daniels and Estes Plans); discipline employees that failed to enforce existing policies pursuant to AR 208; ensure compliance with the *Duke* settlement reforms, and more. SAC ¶¶ 247–50.

- Defendant Watson, as Associate Commissioner for Plans and Programs, had authority to ensure compliance with ADOC's classification policies; order facilities to effectively implement meaningful classification and segregation policies; implement the internal classification system called for in the *Duke* settlement; create Special Safety Units called for in the *Duke* settlement; ensure compliance with AR 400 (governing classification); ensure compliance with the Daniels Plan; and more. *Id.* ¶¶ 257–58.

- Defendant Mercado, as ADOC Chief Law Enforcement Officer, had authority to order standard prison search protocols; oversee lockdowns to search for contraband; provide additional resources and technology to detect contraband; provide additional training (including training specific to the unique dangers present in the hot bay); order heightened security protocols aimed at reducing the impact of understaffing; order that crimes at St. Clair be referred for prosecution; and more. *Id.* ¶¶ 263–64.

- Defendant Ellington, as Institutional Coordinator, had specific oversight for St. Clair's compliance with ADOC regulations and could have taken actions to ensure St. Clair officials did not ignore existing policies. He was part of the Quality Improvement Team and could have developed policies relating to classification and incident reporting. He also could have ensured compliance with the Daniels Plan, and more. *Id.* ¶¶ 270–72.

- Defendant Jones, as Warden of St. Clair, had the authority under AR 018 to ensure safety and security at the prison; discipline employees for failure to follow ADOC and St. Clair policies; oversee compliance with the *Duke* settlement reforms; oversee compliance with the Daniels and Estes Plans; oversee prisoner movement pursuant to SOP 137; order additional searches for

19

contraband; ensure requests for housing transfers were properly documented and addressed; manage the classification unit; and more. *Id.* ¶¶ 278–79.

- Defendant Pickens, as Assistant Warden, had authority to supervise day-to-day operations of St. Clair (including compliance with regulations and policies); ensure policies regarding incident reports, bed counts, contraband searches, and inmate movement were implemented; enforce compliance with SOP 137 relating to inmate movement; order routine shakedowns and other searches; ensure compliance with the Daniels Plan (for which he was ultimately disciplined for failing to do so), and more. *Id.* ¶¶ 286–87.

- Defendant Price, as a Lieutenant and Shift Commander, had authority to order subordinates to comply with SOP 110 (governing searches and shakedowns); ensure each shift was properly staffed according to SOP 31; develop a plan for staff shortages (including ordering staffing by supervisors); order additional staffing in the hot bay; ensure compliance with the Daniels and Estes Plans; ensure subordinates were properly responding to inmate requests for protection and transfers; and more. *Id.* ¶¶ 292–96.

- Defendant Estelle, as Head of Classification, had authority to ensure compliance with existing classification policies; adopt new policies for segregation of low-risk and dangerous inmates; ensure internal classifications systems called for in the *Duke* litigation were implemented; ensure compliance with AR 400 (governing classification); and more. *Id.* ¶¶ 302–03.

- Defendants Malone, White, and Graham, as Captains at St. Clair, had the authority to ensure their subordinates' compliance with the Estes and Daniels Plans (including reviewing, addressing, and following up on inmate requests for housing re-assignments and reported threats of violence); convey reports of violence to the Deputy Warden; order enforcement of classification decisions; order searches and shakedowns under SOP 110; oversee inmate movement pursuant to SOP 137 (including ordering controlled tiered movements in the hot bay pursuant to the Daniels Plan), and more. *Id.* ¶¶ 309–11; 317–19, 325–27.

The Facility Supervisor Defendants' reliance on *Pilcher v. Dunn* is misplaced.

The plaintiff there failed to plead "plausible facts supporting an allegation there were

other things [aside from petitioning the legislature for more funds]" that the

20

defendants "could have done to correct the problem" of understaffing and overcrowding. 2023 WL 2756978 at *5. Mr. McCarley, in contrast, alleges that the Supervisor Defendants failed to address a number of systemic failures beyond mere overcrowding and understaffing, and that "hiring additional correctional officers was not the only option to address the risks posed by understaffing." SAC ¶ 145. He alleges they failed to take actions to alleviate the effects of "chronic overcrowding and understaffing," including by failing to adhere to SOP 32 ("Staff Manning Requirements"), failing to increase camera coverage or establish tiered rotations that would reduce the time inmates are outside their cells, failing to create staffing plans of action, failing to staff supervisors to fill staffing gaps, failing to increase officer training, failing to take reasonable steps to improve supervision, failing to properly discipline policy violations by correctional officers, and more. SAC ¶¶ 145, 244; *see also id.* ¶¶ 252, 260, 266, 274, 284, 289, 293, 296, 309, 317, and 325.[3]

In short, the Supervisor Defendants were aware of the widespread history of violence at St. Clair and of the specific conditions that made St. Clair excessively dangerous. And they had the ability to implement measures to curb that violence but failed to implement these measures. The SAC states a claim accordingly.

---

[3] The Facility Supervisor Defendants also cite *Pilcher* to argue that violence at St. Clair was not widespread enough to put them on notice of a violation. Dkt. 96 at 11. But, the *Pilcher* plaintiff alleged "only six instances of inmate-on-inmate violence in the two years prior to [his] attack, none of which he specifically allege[d] took place in [that facility's] hot bay." 2023 WL 2756978 at *6.

21

## IV.    Defendants Are Not Entitled to Qualified Immunity.

Government officials are not entitled to qualified immunity when their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known.'' *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003). "The 'salient question' is 'whether the state of the law' at the time of the official's conduct gave the official 'fair warning that their alleged treatment of [the plaintiff] was unconstitutional.'" *Dickinson*, 833 F. App'x at 273. Plaintiffs can demonstrate violation of a clearly established right in one of three ways: (i) showing "that a materially similar case has already been decided," (ii) showing "that a broader, clearly established principle should control the novel facts of a particular situation," or (iii) alleging conduct "which so obviously violates the constitution that prior case law is unnecessary." *Dickinson*, 833 F. App'x at 273–74 (quotation omitted). The SAC satisfies all three.

### A.    Materially Similar Cases Gave Defendants Fair Warning of the Unlawfulness of their Conduct.

The Supreme Court has "made clear" that "prison officials have a duty 'to protect prisoners from violence at the hands of other prisoners,' . . . and that an official may be liable if he knows of and disregards a substantial risk of an inmate-on-inmate attack 'by failing to take reasonable measures to abate [the risk].'" *Scott v. Miami Dade Cnty.*, 657 F. App'x 877, 885 (11th Cir. 2016) (citing *Farmer*, 511 U.S. at 833). Each Defendant was provided fair notice by materially similar cases.

22

***Supervisor Defendants.*** Several Eleventh Circuit cases provided the Supervisor Defendants fair notice that their conduct violated Mr. McCarley's clearly established rights. For example, in *Hale*, the plaintiff was severely beaten by another inmate. 50 F.3d at 1581. The jail suffered from overcrowding for years, which contributed to violence among inmates; inmates were not segregated based on their proclivity for violence; officials failed to regularly monitor the inmates; and unlocked doors permitted inmates to roam among cells. *Id.* at 1580–81. The Eleventh Circuit found that a jury could reasonably conclude that the defendants' deliberate indifference to an excessive risk of violence at the jail, including that of the supervisor defendants, caused the plaintiff's injuries. *See id.* at 1582–85.

Similarly, in *Marsh*, the Eleventh Circuit held that the plaintiffs stated claims arising out of violent assaults by other inmates. *See Marsh*, 268 F.3d at 1026–35. The plaintiffs alleged that inadequate monitoring allowed inmate activities to go unchecked, inmates were not properly screened or classified, inmates easily made and possessed contraband weapons, and officials failed to discipline or segregate violent prisoners—all of which contributed to the attacks on the plaintiffs. *Id.* at 1020. The court found that the defendants' deliberate indifference to these risks violated clearly established Eighth Amendment rights. *See id.* at 1028–35; *see also Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1101 (11th Cir. 2014) (similar).

23

And, in *Dickinson*, the plaintiff, in custody for a misdemeanor charge, was stabbed by a cellmate with a history of violence. 833 F. App'x at 270. He alleged that the jail "house[d] dangerous inmates in crowded conditions with non-violent inmates," allowed "the introduction of contraband," and "inadequately supervised inmates," all of which "led to an ongoing problem with inmate-on-inmate violence" and caused the plaintiff—"a nonviolent, first-time offender—to be stabbed." *Id.* at 272. The Eleventh Circuit held that the supervisors violated clearly established rights by "doing nothing to address the jail's conditions," including failing to implement a "proper classification system," "adequately train correctional officers," limit contraband, or ensure appropriate searches/supervision. *Id.* at 272–73.

This authority is materially similar to the facts alleged here. Just as in *Dickinson*, *Marsh*, and *Hale*, the SAC alleges the Supervisor Defendants' failure to implement or ensure that officers were following effective safety protocols created an excessive risk of violence at St. Clair that violated Mr. McCarley's constitutional rights. In light of these systemic deficiencies, the SAC establishes that the Supervisor Defendants were aware that inmate-on-inmate violence had become the norm at St. Clair. *See Marsh*, 268 F.3d at 1029; *see also* SAC ¶¶ 105–24; 143–55; 159–65 (detailing violent incidents that became regular occurrences at St. Clair and of which the Supervisor Defendants were aware). That states a claim for which qualified immunity does not apply. *See Marsh*, 268 F.3d at 1034 (it was an "unreasonable

24

response for an official to do nothing when confronted with prison conditions"); *accord Dickinson*, 833 F. App'x at 272–73 .

In its previous ruling, the Court acknowledged that "McCarley's allegations are comparable to those brought by the plaintiff in" *Dickinson*, but distinguished this case on the basis that, in *Dickinson*, "the facility lacked a classification system and lacked—or did not implement—procedures for discovering contraband," whereas Mr. McCarley alleged that "St. Clair Correctional has implemented ADOC's extensive classification procedure" and had "a 'zero-tolerance' policy for contraband." Dkt. 54 at 13–14. But Mr. McCarley alleges that the Supervisor Defendants knew that this policy was not regularly implemented and that non-violent inmates were improperly housed in general population at St. Clair—even in the hot bay—contrary to what policy required. *See* SAC ¶¶ 126, 46. The same was true for ADOC's purported "zero-tolerance" policy for contraband. *See, e.g.*, *id.* ¶ 168. The mere existence of a policy does not entitle Defendants to qualified immunity when the allegations are that the policy is readily ignored and Defendants knew as much. *See Ingram v. Kubik,* 30 F.4th 1241, 1256 (11th Cir. 2022) (allowing supervisory liability where the facts established the "absence" of meaningful implementation of existing policy); *see also Marsh*, 268 F.3d at 1029 (similar).

In their motions, the Supervisor Defendants rely extensively on *Marbury v. Warde*n to argue that they did not violate clearly established law. *See* Dkt. 94 at 8–

25

9, 11; Dkt. 96, at 18–19. This reliance is misplaced. *Marbury* held that, *at summary judgment*, evidence of only "occasional, isolated attacks by one prisoner on another" may not, under certain circumstances, be actionable under the Eighth Amendment. *Marbury*, 936 F.3d at 1234. That is not what is alleged here. The SAC does not merely allege "occasional, isolated attacks"—it details a widespread history of violence driven by specific deficiencies in the operation and supervision of the prison, which Defendants were aware of and did nothing to stop. SAC ¶¶ 131–180.

The Eleventh Circuit has also clarified *Marbury*, explaining that "*Marbury* makes clear [that] its violence-is-the-norm standard applies where a plaintiff alleges only a generalized risk and points to no 'specific features of a facility or its population rendering it particularly violent.'" *Dickinson*, 833 F. App'x at 275 (quoting *Marbury*, 936 F.3d at 1235). "*Marbury* says that if the only evidence of deliberate indifference to inmate-on-inmate abuse is that jail officials knew about a generalized risk of violence, without more, the evidence must show that the risk was so great it was something close to normalized violence or a reign of terror." *Id*. Summary judgment was appropriate there because "[t]he plaintiff in *Marbury* produced no evidence of and made no allegations regarding the specific features of the prison that would make it particularly violent.'" *Id*.

In contrast, the Eleventh Circuit has emphasized that it is clearly established that a prison official violates the Eighth Amendment where "alleged specific features

26

of the jail . . . render it particularly violent" and officials are deliberately indifferent to such risks. *Id.* Such features can include overcrowding, failure to segregate violent inmates, failure to limit contraband, and failure to adequately supervise inmates. *See id*; *Hale*, 50 F.3d at 1584–85 (similar); *Marsh*, 268 F.3d at 1034 (similar). That is precisely what the SAC alleges, meaning this case is "materially similar" to *Hale*, *Marsh*, and *Dickinson*, providing "fair warning" that "failure to correct the known inmate-on-inmate abuse" violated a clearly-established constitutional right. *Hale*, 50 F.3d at 1584-85; *Marsh*, 268 F.3d at 1034; *Rodriguez*, 508 F.3d at 618–24.[4]

**Defendants Baker and Dent.** Eleventh Circuit authority also provided Defendants Baker and Dent fair notice that their conduct violated Mr. McCarley's clearly established rights. In *Rodriguez*, the plaintiff, who was being held in administrative segregation, informed prison officials on multiple occasions that inmates had threatened to kill him if he was released into general population. *Rodriguez*, 508 F.3d at 613–14; *Scott*, 657 F. App'x at 881 (similar). Despite these warnings, the officials released the plaintiff into general population, where he was violently stabbed within hours. *Id*. at 614. The Eleventh Circuit found that this

---

[4] The Supervisor Defendants' other cases are inapposite. *See* Dkt. 94 at 15–19; Dkt. 96 at 18–19. *Harrison v. Culver* merely held that, at summary judgment, the plaintiff failed to produce sufficient evidence showing that the number of assaults alone established an unreasonable risk of harm. 746 F.3d 1288, 1300 (11th Cir. 2014). In *Cottone v. Jenne*, 326 F.3d 1352 (11th Cir. 2003), the plaintiff did "not allege any affirmative custom or policy implemented by the supervisory defendants that played a role in Cottone's death." *Id.* at 1362. The SAC, however, alleges that Supervisor Defendants' failure to implement and ensure that policies were followed led to his attack.

27

evidence could establish an excessive risk of harm at the prison that resulted in the plaintiff's injuries, amounting to a violation of the Eighth Amendment. *See id.* at 618–624. Like in *Rodriguez*, Mr. McCarley informed these Defendants that he received threats to his life and that he was not safe in general population. *Rodriguez* provided Defendants Baker and Dent fair notice that their conduct violated Mr. McCarley's clearly established rights.

### B. Broader Principles Underlying the Eighth Amendment Defeat Qualified Immunity.

Broader, clearly established principles flowing from the Eighth Amendment also provided Defendants with fair notice of the unconstitutionality of their conduct. "A prison official violates the Eighth Amendment when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to [that] risk." *Caldwell*, 748 F.3d at 1099 (citation and quotation omitted). "This broad principle has put all law-enforcement officials on notice that if they actually know about a condition that poses a substantial risk of serious harm and yet do nothing to address it, they violate the Constitution." *Patel v. Lanier Cnty.*, 969 F.3d 1173, 1190–91 (11th Cir. 2020).

These broad principles put Defendants on notice that their conduct violated Mr. McCarley's constitutional rights. With regard to Defendants Baker and Dent, the Eleventh Circuit has made clear that threats of violence place prison officials on notice of a risk of harm where an inmate informs officials of these specific threats,

28

explains that he is in fear due to these threats, and seeks protective custody. *See Rodriguez*, 508 F.3d at 621–22. No reasonable prison official would believe it was permissible to ignore Mr. McCarley's repeated pleas for help, especially given the horrific violence and conditions present at St. Clair and that he was not supposed to be in the hot bay. *See, e.g.*, *Rodriguez*, 508 F.3d at 621. Defendants are thus not entitled to qualified immunity. *See Farmer*, 511 U.S. at 833; *Patel*, 969 F.3d at 1190. That is especially true of Defendant Dent, whose promise to "throw [Plaintiff] to the wolves" clearly violated these principles. *Scott*, 657 F. App'x at 885.[5]

The same is true of the Supervisor Defendants, who did nothing in the face of specific, dangerous conditions at St. Clair. As Judge Bowdre explained in *Wilson*:

> [Plaintiff] has alleged that his injuries resulted from appalling conditions of widespread violence, contraband weapons, understaffing, and unauthorized prisoner movement. He alleges that the Officials knew of these conditions and . . . failed to enforce and follow their policies to remedy the conditions. . . . In other words, the Defendants allegedly stripped [Plaintiff] of his safety and 'let the state of nature take its course . . . .The broader principle set forth in *Farmer* controls these allegations; so qualified immunity does not apply.

*Wilson*, 618 F. Supp. 3d at 1283 (quoting *Farmer*, 511 U.S. at 833).

## C.   Defendants' Conduct So Obviously Violates the Constitution that Prior Case Law is Unnecessary.

Lastly, Defendants are not entitled to qualified immunity because this is a case of obvious clarity. Defendants' alleged conduct clearly violated the Constitution due

---

[5] *Carter v. Galloway*, 352 F.3d 1346 (11th Cir. 2003), is distinguishable because the plaintiff "never told prison officials that he 'feared' his attacker, never told them that he had been 'clearly threatened,' and never asked to be placed in 'protective custody.'" *Rodriguez*, 508 F.3d at 621.

to the "obvious cruelty inherent" in allowing Mr. McCarley to be housed under the "wantonly . . . dangerous situations" facilitated by Defendants. *See Taylor v. Riojas*, 141 S. Ct. 52, 52–54 (2020). Defendants Baker and Dent, instead of takings steps to address Mr. McCarley's concerns and request for transfer, "threw him to the wolves" and chased him out of their office. The Supervisor Defendants knowingly allowed numerous, specific security issues to persist at St. Clair, despite repeatedly being warned by the DOJ, EJI, internal reports, numerous lawsuits, and more that these issues created a substantial risk of serious harm to inmates. Any reasonable official would have known that such conduct "was at war with the command of the Eighth Amendment." *Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015).

## V.    Mr. McCarley Has Stated Claims Under Alabama Law.

State agency immunity does not apply to Mr. McCarley's negligence claim because the SAC alleges (i) underlying conduct that violated the Constitution and laws of the United States; and (ii) that Defendants acted willfully and with malice. *See Ex parte Cranman v. Maxwell*, 792 So. 2d 392, 405 (Ala. 2000) (discussing *Cranman* exceptions); *see also Taylor*, 920 F.3d at 734–35 (denying immunity where plaintiff alleged violation of Constitution). Defendants owed duties of care to Mr. McCarley, and the SAC alleges that they breached those duties. *See, e.g.*, *Huffman*, 2021 WL 2533024, at *6–*7 (defendants breached duties where they "fail[ed] to correct the known risk of violence . . . at St. Clair").

## CONCLUSION

For the reasons set forth above, the Court should deny Defendants' Motions

to Dismiss (Dkt. 93, 95). In the event the Court finds any aspect of Mr. McCarley's

SAC deficient, Mr. McCarley requests that any dismissal be without prejudice.

Dated: September 5, 2023                    Respectfully submitted,

J.S. "Chris" Christie, Jr.                  */s/ Brandon R. Keel*
(ASB-3162-H07J)                             Brandon R. Keel (*pro hac vice*)
Gaile P. Gratton                            Charlie Spalding, Jr. (*pro hac vice*)
(ASB-9988-r63g)                             **KING & SPALDING LLP**
Alyse N. Windsor                            1180 Peachtree Street, NE
(ASB-8902-V72C)                             Atlanta, GA 30309
**DENTONS SIROTE, P.C.**                    T: (404) 572-4600
2311 Highland Avenue South                  bkeel@kslaw.com
Post Office Box 55727                        cspalding@kslaw.com
Birmingham, AL 35255-5727
chris.christie@dentons.com                  Julia C. Barrett (*pro hac vice*)
gaile.grattongreene@dentons.com             **KING & SPALDING LLP**
alyse.windsor@dentons.com                   500 W. 2nd Street, Suite 1800
                                            Austin, TX 78701
                                            T: (512) 457-2000
                                            jbarrett@kslaw.com

*Counsel for Plaintiff John McCarley*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on September 5, 2023, a true and exact copy of the foregoing has been electronically transmitted to the Clerk of Court using the ECF System for filing, which will provide electronic notice of filing to all counsel of record.

By: */s/ Brandon R. Keel*

Brandon R. Keel
Admitted *pro hac vice*